## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ORCHIDS PAPER PRODUCTS COMPANY, *et al.*,[1] | Case No. 19-10729 (MFW) |
| | Jointly Administered |
| Debtors. | **Re: Docket No. 18** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507, BANKRUPTCY RULES 2002, 4001, 6004 AND 9014 AND LOCAL BANKRUPTCY RULES 2002-1, 4001-1, 4001-2 AND 6004-1 (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING, (II) AUTHORIZING THE DEBTORS' LIMITED USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above referenced debtors and debtors in possession (the "Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), for entry of an interim order (this "Interim Order") and a final order (the "Final Order"), pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, *inter alia*:

    (i)    authorization for (a) Debtor Orchids Paper Products Company, as borrower (the "Borrower"), and the other Debtors, as guarantors, to obtain up to $11 million in principal amount of postpetition financing (the "DIP Facility"), and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Orchids Paper Products Company, a Delaware corporation (6944), Orchids Paper Products Company of South Carolina, a Delaware corporation (7198), and Orchids Lessor SC, LLC, a South Carolina limited liability company (7298). The location of the Debtors' mailing address is 201 Summit View Drive, Suite 110, Brentwood, Tennessee 37027.

to access up to $4 million in the interim (the "Interim DIP Facility") and pending a final hearing all on the terms and conditions set forth in this Interim Order and that certain Senior Secured Superpriority Debtors-in-Possession Credit Agreement (the "DIP Credit Agreement," substantially in the form attached hereto as Exhibit A and together with this Interim Order, and all appendices, exhibits or schedules hereto and to the DIP Credit Agreement, including, without limitation, the Approved Budget (defined below) as the same may be amended, restated or supplemented from time to time in accordance with the terms hereof and thereof, collectively, the "DIP Loan Documents"),[2] among the Debtors, the lender(s) party thereto (collectively, the "DIP Lenders"), and Black Diamond Commercial Finance, L.L.C., a Delaware limited liability company, as Administrative Agent (the "DIP Agent");

(ii)    authorization for the Debtors to, subject to the Carve-Out (defined below) and Permitted Prior Senior Liens (defined below), grant security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Lenders to secure all obligations of the Debtors under and with respect to the DIP Facility (collectively, the "DIP Obligations"), including, subject to and effective upon entry of the Final Order, on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under Chapter 5 of the Bankruptcy Code, including sections 544, 545, 547, 548 and 550 or any other similar state or federal law (collectively, the "Avoidance Action Proceeds");

(iii)   authorization for the Debtors, pursuant to sections 105, 361, 362, 363 and 507 of the Bankruptcy Code to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral", which shall not include loan proceeds of the DIP Facility), and all other Prepetition Collateral (defined below), in accordance with the terms of this Interim Order and the Approved Budget, as provided herein;

(iv)   to, subject to the Carve-Out and any Permitted Prior Senior Liens, provide Adequate Protection (defined below) of the liens and security interests (such liens and security interests, the "Prepetition Liens") of the prepetition lender(s) (such financial institutions in such capacities, the "Prepetition Lenders") under that certain Second Amended and Restated Credit Agreement dated as of June 25, 2015 as amended, restated, replaced and/or modified from time to time ("Credit Agreement", along with any other agreements, instruments, notes, guaranties and other documents related thereto are referred

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to those terms in the DIP Loan Documents.

13235690.9

to herein collectively as the "Prepetition Financing Documents"), by and among the Borrower, as borrower, the Guarantors, as guarantors, the Prepetition Lenders, and Ankura Trust Company, as administrative agent (as successor to U.S. Bank National Association) (in such capacity, the "Prepetition Agent", and together with the Prepetition Lenders, the "Prepetition Secured Parties"), which Prepetition Liens are being consensually primed by the DIP Facility, as more fully set forth in this Interim Order;

(v)     modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the Final Order;

(vi)    that this Court hold an interim hearing (the "Interim Hearing") to consider the relief sought in the Motion and entry of the proposed Interim Order;

(vii)   that this Court schedule a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis; and

(viii)  waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order or the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

and the Interim Hearing having been held by this Court on April 3, 2019; and pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, due and sufficient notice of the Motion and the relief sought at the Interim Hearing having been given under the particular circumstances by the Debtors; this Court having considered the Motion and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AS FOLLOWS:**

A.      On April 1, 2019 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      No official committee of unsecured creditors ("Committee"), as provided for under section 1102 of the Bankruptcy Code, has been appointed in the Chapter 11 Cases.

C.      Subject to Paragraph 16 below, without prejudice to the rights, if any, of any other party, the Debtors admit, stipulate and agree that: as of the Petition Date, the Debtors were indebted and liable, without defense, counterclaim or offset of any kind to the Prepetition Secured Parties under the Prepetition Financing Documents, including under that certain Credit Agreement in an aggregate principal amount of approximately $187,845,838.04. All obligations of the Debtors arising under the Credit Agreement or any other Prepetition Financing Documents, including all loans, advances, debts, liabilities, principal, interest, fees, charges, expenses and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Secured Parties by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall be referred to herein collectively as the "Prepetition Secured Obligations"; and the collateral encumbered by the Prepetition Financing Documents pursuant to which each Debtor granted to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, a first-priority security interest in and continuing lien on to secure such Debtors' Prepetition Secured Obligations shall be referred to herein collectively as the "Prepetition Collateral".

D.      The Debtors have an immediate and critical need to obtain postpetition financing under the DIP Facility and to use Cash Collateral to, among other things, pay the costs and expenses associated with administering the Chapter 11 Cases, continue the orderly operation of the Debtors' business, maximize and preserve the Debtors' going concern value, make payroll and satisfy other working capital and general corporate purposes, in each case, in accordance with the Approved Budget. Without access to the DIP Facility and the continued use of Cash

Collateral to the extent authorized pursuant to this Interim Order, the Debtors and their estates would suffer immediate and irreparable harm.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without access to the DIP Facility and the authorized use of Cash Collateral.

E.     In light of the Debtors' facts and circumstances, the Debtors would be unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code, or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code, and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Lenders on terms more favorable than the terms of the DIP Facility. The only viable source of secured credit available to the Debtors, other than the use of Cash Collateral, is the DIP Facility.  The Debtors require both additional financing under the DIP Facility and the continued use of Cash Collateral under the terms of this Interim Order to satisfy their postpetition liquidity needs.

F.     The DIP Lenders have indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in this Interim Order and the DIP Loan Documents.  Accordingly, after considering all of its practical alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lenders pursuant to the terms of this Interim Order and the DIP Loan Documents represents the best financing currently available to the Debtors.

13235690.9

G.      The consent of the Prepetition Secured Parties to the priming of their liens by the DIP Liens, the Carve-Out and use of the Prepetition Collateral, including Cash Collateral, by the Debtors, is limited to this Interim Order and the DIP Facility presently before this Court and shall not extend to any other postpetition financing or to any modified version of this DIP Facility with any parties other than the DIP Lenders.  Furthermore, the consent of the Prepetition Secured Parties to the priming of their liens by the DIP Liens, the Carve-Out and use of the Prepetition Collateral, including Cash Collateral, by the Debtors does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Parties that their interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise, provided, however, the Prepetition Secured Parties agree that the Adequate Protection granted to the Prepetition Secured Parties in this Interim Order is reasonable and calculated to protect the interests of the Prepetition Secured Parties, subject to the rights of the Prepetition Secured Parties to seek a modification of such Adequate Protection, as set forth below.

H.      The security interests and liens granted pursuant to this Interim Order to the DIP Lenders are appropriate under section 364(d) of the Bankruptcy Code because, among other things, either (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates, (ii) the holders of such valid, perfected, prepetition security interests and liens have consented to the security interests and priming liens granted pursuant to this Interim Order to the DIP Lenders and/or (iii) the interests of any holder of a valid, perfected, prepetition security interest or lien are otherwise adequately protected.

13235690.9

I.        Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2(b).   In particular, the authorization granted herein for the Debtors to execute the DIP Loan Documents, to continue using the Prepetition Collateral, including Cash Collateral, and to obtain interim financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Interim Order is in the best interest of the Debtors, their estates and creditors.  The terms of the DIP Loan Documents (including the Debtors' continued use of the Prepetition Collateral, including Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration for the Prepetition Secured Parties' consent thereto.

J.        The Debtors, the DIP Lenders and the Prepetition Secured Parties have negotiated the terms and conditions of the DIP Loan Documents (including the Debtors' continued use of the Prepetition Collateral, including Cash Collateral) and this Interim Order in good faith and at arm's length, and any credit extended and loans made to the Debtors pursuant to this Interim Order shall be, and hereby are, deemed to have been extended, issued or made, as the Cases may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.   The Prepetition Secured Parties are entitled to receive Adequate Protection as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any diminution in the value of their respective interests in the Prepetition Collateral, including Cash Collateral, resulting from the automatic stay or the Debtors' use, sale or lease of the Prepetition Collateral, including Cash Collateral, during the Chapter 11 Cases.

13235690.9

K.      The Debtors acknowledge, represent, stipulate and agree, that, (i) subject to the entry of this Interim Order, the Debtors have obtained all known authorizations, consents and approvals necessary from, and have made all known filings with and given all known notices to, all federal, state and local governmental agencies, authorities and instrumentalities required to be obtained, made or given by the Debtors in connection with the execution, delivery, performance, validity and enforceability of the DIP Loan Documents; and (ii) due to the commencement of these Chapter 11 Cases, the Debtors are in default with respect to their Prepetition Obligations and an Event of Default has occurred under the Prepetition Financing Documents.

L.      Notwithstanding anything to the contrary herein or in the Motion, Debtor Orchids Lessor SC, LLC ("Orchids Lessor SC") is not a borrower under or guarantor of the DIP Loan, is not pledging any of its assets as collateral to secure the DIP Loan, and is not otherwise a party to any of the DIP Loan Documents.  Likewise, the Prepetition Secured Parties are not receiving a replacement or adequate protection lien against or any other rights with respect to Orchids Lessor SC or its assets.

M.      Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**[3]

1.      <u>Granting of Motion</u>.  The Motion is granted, on an interim basis, as and to the extent set forth herein.

2.      <u>Jurisdiction and Venue</u>. Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2).  This Court has jurisdiction over this

---

[3] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

13235690.9

proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      <u>Notice</u>.  On the Petition Date, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Rules of this Court, the Debtors have represented that they provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated below: (i) the Office of the United States Trustee for this District (the "<u>U.S. Trustee</u>"); (ii) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition Agent, the DIP Agent and the DIP Lenders; (iv) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (v) the local office for the Internal Revenue Service; (vi) the Securities and Exchange Commission; and (vii) any party having filed requests for notice in the Chapter 11 Cases (collectively, (i)-(vi), the "<u>Notice Parties</u>").  Given the nature of the relief sought in the Motion, this Court concludes that the form, scope and timing of the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable law, and no further notice relating to the Interim Hearing or Motion is necessary or required.

4.      <u>The Approved Budget</u>.

(a)      Subject to and in accordance with the terms of the DIP Credit Agreement, the Borrower and its Subsidiaries shall not pay any expenses other than those set forth in the budget approved by the DIP Agent and the Required Lenders (defined in the DIP Credit Agreement), substantially in the form of the annexed hereto <u>Exhibit B</u> (together with any

13235690.9

subsequent budget which the DIP Agent and the Required Lenders may, in their sole discretion, approve, the "Approved Budget"), except that payment of Statutory Fees, as that term is defined in paragraph 12 below, shall not be subject to any budget.  On or before each of the 1st and 15th day of each month, the Debtors shall provide to the DIP Agent and DIP Lenders an updated proposed budget and if the DIP Agent and DIP Lenders in their sole discretion shall approve such updated proposed budget, it shall replace and supersede the then existing Approved Budget. The Debtors shall file and serve any updated Approved Budget in accordance with paragraph 4(b), below.  The Debtors may use the proceeds of the DIP Facility and Cash Collateral, for the purposes and up to the amounts set forth in the Approved Budget (except that payment of Statutory Fees shall not be subject to any budget), subject to the terms and conditions set forth in the DIP Credit Agreement and this Interim Order.  On or before the third Business Day of each week, the Debtors shall provide to the DIP Agent (A) a Variance Report for such week and (B) a certification by the Interim Chief Strategy Officer, that such person has no reason to believe that such Variance Report is incorrect or misleading in any material respect.  On or before the second Business Day of each week, the Debtors shall provide to the DIP Agent, a report on the prior weekly sales by customer, together with a comparison to budgeted sales for such period and a certification by the Interim Chief Strategy Officer that such person has no reason to believe that such comparison is incorrect or misleading in any material respect. The amount of the DIP Facility and Cash Collateral authorized to be used hereby shall not exceed the amounts reflected in the Approved Budget and as otherwise provided in the DIP Credit Agreement, which shall be in form and substance satisfactory to the DIP Lenders for the time period set forth therein.

(b)     The Approved Budget may be amended, supplemented, extended or otherwise modified from time to time in any manner as the DIP Agent and the Required Lenders

13235690.9

may, in their sole discretion, approve subject to the terms of the DIP Credit Agreement without further order of this Court; provided that notice of any amendments shall be filed with the Court and served on the U.S. Trustee and counsel to any Committee.

5.     Use of Prepetition Collateral (including Cash Collateral).  Immediately upon entry of this Interim Order, the Debtors are authorized to use Cash Collateral, subject to and as set forth in the Approved Budget, this Interim Order and the DIP Loan Documents.  The Debtors are further authorized to use the Prepetition Collateral (including Cash Collateral) during the period from the Petition Date through and including the maturity date in accordance with the terms and conditions of this Interim Order; provided, that the Prepetition Secured Parties are granted Adequate Protection as set forth in this Interim Order.

6.     Borrowing Authorization.

(a)     The DIP Facility.  The Debtors are authorized to enter into and perform the transactions contemplated in this Interim Order and the DIP Loan Documents and such additional documents, instruments, and agreements as may be reasonably required by the DIP Lenders to implement the terms or effectuate the purposes of this Interim Order, and to receive financial accommodations and borrow under the Interim DIP Facility up to $4,000,000.00 subject to the terms set forth in the DIP Credit Agreement.  The DIP Credit Agreement and the other DIP Loan Documents shall constitute and are hereby deemed to be the legal, valid and binding obligations of the Debtors and their estates, enforceable against each such Debtors and their respective estates in accordance with the terms hereof and the DIP Loan Documents and any successor of each such Debtors or any representative of the estates (including a trustee, responsible person, or examiner with expanded powers).  The Debtors are authorized to obtain financial accommodations pursuant to the terms of the Approved Budget, this Interim Order, the

DIP Credit Agreement, and the other DIP Loan Documents and the Guarantors are hereby authorized to guaranty such financial accommodations and borrowings in accordance with the terms of this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents.

(b)     Working Capital.  The Debtors are authorized to use the DIP Facility and Cash Collateral to fund working capital requirements of the Debtors during the Chapter 11 Cases and other line items subject to and in accordance with the terms of the Approved Budget, this Interim Order, and the DIP Loan Documents.

7.     Due Authorization.  The Debtors acknowledge, represent, stipulate and agree, and this Court hereby finds and orders, that:

(a)     in entering into the DIP Loan Documents and obtaining the use of Cash Collateral, and as consideration therefor and for the other accommodations and agreements of the DIP Lenders reflected herein and in the DIP Loan Documents, the Debtors hereby agree (but the Court does not Order) that until such time as all of the DIP Obligations are indefeasibly paid in final in full in cash and the DIP Credit Agreement and DIP Loan Documents are terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the DIP Obligations, the DIP Liens or the DIP Superpriority Claims provided to the DIP Lenders under this Interim Order by offering a subsequent lender or a party in interest a superior or *pari passu* lien or administrative expense pursuant to sections 105(a), 328, 330, 331, 364(c), 364(d), 503, 506, 507(a)(except for 507(a)(1)), 507(b), 546(c) or 1114 of the Bankruptcy Code or otherwise or acquiescing thereto except as expressly authorized in the DIP Credit Agreement (provided, that the DIP Liens, the DIP Superpriority Claims, the liens of the Prepetition Secured Parties, the Adequate Protection Liens (defined below), and the Section 507(b) Claims (defined below) of the Prepetition Secured Parties, shall be subordinate and subject to the Carve-Out

(defined below); and

(b)     in no event shall the DIP Lenders, by exercising any rights or remedies under the DIP Facility or this interim Order, or by entering into the DIP Loan Documents, be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the actions of the DIP Lenders do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs by the lender of a vessel or facility owned or operated by Debtors, or otherwise cause liability to arise to the federal or state government, or to be a responsible person or managing agent under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, sections 9601 et seq. of title 42, United States Code, as amended, or any similar federal or state statute).

8.     <u>DIP Interest and Payment of Expenses</u>.

(a)     Each Advance shall bear interest at the applicable rate (including any applicable default rate after the occurrence of an Event of Default) set forth in the DIP Loan Documents, and be due and payable in accordance with this Interim Order and the DIP Loan Documents, in each Cases without further notice, motion or application to, order of, or hearing before, this Court.

(b)     The Debtors shall pay the reasonable and documented prepetition and postpetition fees and expenses of the attorneys and advisors (each, a "DIP Lenders' Advisor") for the DIP Agent and the DIP Lenders as provided under the DIP Loan Documents.  No DIP Lenders' Advisor shall be required to file an application seeking compensation for services or reimbursement of expenses with this Court.  Each DIP Lenders' Advisor seeking compensation

for services or reimbursement of expenses under the DIP Loan Documents, this Interim Order or a Final Order shall transmit a summary invoice to counsel to the Debtors, the U.S. Trustee and the Committee, if any, which summary invoices shall include a general description of the nature of the matters worked on, a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, the year of law school graduation for each attorney; provided, however, that the U.S. Trustee reserves the right to seek copies of invoices containing the detailed time entries of any professional. Any summary invoice may be reasonably redacted by the DIP Lenders' Advisor to protect from disclosure any confidential information or information otherwise subject to a protective privilege such as attorney-client privilege or attorney work-product privilege, provided, however, that U.S. Trustee reserves his right to seek to obtain unredacted copies of such invoices.  The Debtors, U.S. Trustee and Committee, if any, shall have ten (10) Business Days in which to raise an objection to the payment of any fees and expenses of such attorneys and advisors.  Upon the expiration of such ten (10) Business Day period, the Debtors shall promptly pay any portion of such fees and expenses to which no objection has been interposed.  To the extent any objection has been interposed and cannot be consensually resolved, the dispute will be scheduled for adjudication at the next regularly-scheduled omnibus hearing in the Chapter 11 Cases.

9.     Amendments.  The Debtors are expressly authorized and empowered to enter into amendments, supplements, extensions or other modifications from time to time in any manner as to which Debtors and the DIP Lenders, as required in the DIP Credit Agreement, mutually agree in writing without further order of this Court; provided, that any material modification or amendment shall require  Court approval, upon a motion on notice to parties in

13235690.9

interest; and provided further that the Debtors shall provide notice of any modification or amendment that the Debtors believe to be immaterial to the U.S. Trustee and counsel to the Committee, if any, which parties may object to such modification or amendment, in writing, within five (5) Business Days from the date of the transmittal of such notice (which, to the extent such contact information for such parties is known to the Debtors, shall be transmitted by fax or e-mail, and, if not known, by overnight mail); provided, further, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of this Court, the entry of which may be sought on an expedited basis.

10.     Superpriority Claims and DIP Liens.  In respect of the DIP Obligations under the DIP Credit Agreement, the other DIP Loan Documents and this Interim Order, the DIP Lenders are granted the following with respect to the Debtors, their respective estates and all DIP Collateral:

(a)     a superpriority administrative expense claim pursuant to section 364(c)(1) Bankruptcy Code with the priority specified in sections 503(b) and 507(b) of the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a),  328, 330, 331, 503(b), 506(c)(subject to and effective upon entry of a Final Order), 507(a)(other than 507(a)(1)), 507(b), 546(c) and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment), and the Carve-Out (the "DIP Superpriority Claims"); provided that pursuant to applicable bankruptcy law, the DIP Superpriority Claims does not affect the status and superior priority of any liens, including the liens of the DIP Lenders, the Prepetition Secured Parties and the holder of any Permitted Prior Senior Lien (defined below).

13235690.9

(b)     a first priority, priming security interest in and lien pursuant to section 364(d)(1) of the Bankruptcy Code on all encumbered property of the Debtors and their estates (the "Section 364(d)(1) Liens"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, subject only to (i) the Carve-Out and (ii) liens on property of the Debtors (including the proceeds of such property) that are in existence on the Petition Date but only, if applicable, (A) to the extent a lien on any property is valid, perfected, and not avoidable, (B) the lien on such property (or the proceeds of such property, as applicable) on the Petition Date is a valid, perfected and non-avoidable Permitted Lien (defined in the Credit Agreement) senior in priority to the prepetition liens on such property or (C) valid, non-avoidable liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (the foregoing clauses (A)-(C) being referred to collectively as the "Permitted Prior Senior Liens");[4]

(c)     a first priority security interest and lien pursuant to section 364(c)(2) of the Bankruptcy Code on all unencumbered property of the Debtors (the "Section 364(c)(2) Liens"), including, subject to entry of the Final Order, Avoidance Action Proceeds, which Section 364(c)(2) Liens shall be subject only to the Carve-Out; and

(d)     a junior security interest and lien pursuant to section 364(c)(3) of the Bankruptcy Code on all property of the Debtors and their estates that is subject to a Permitted Prior Senior Lien (collectively, the "Section 364(c)(3) Liens"), which Section 364(c)(3) Liens are also subject to the Carve-Out.  The Section 364(d)(1) Liens, Section 364(c)(2) Liens, and Section 364(c)(3) Liens shall be collectively referred to as the "DIP Liens."

11.     DIP Collateral.  The DIP Liens of the DIP Lenders under the DIP Loan

13235690.9

Documents and as approved and perfected by this Interim Order include, inter alia, liens upon and security interests in (i) all of those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code, (ii) to the extent not expressly prohibited by law or contract, all of those items and types of collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests, and commercial tort claims of the Debtors, (iii) any and all other collateral of any nature or form, and (iv) the products, rents, offspring, profits, and proceeds of any of the foregoing (collectively, (i)-(iv), the "DIP Collateral").  None of the DIP Obligations, DIP Liens or DIP Superpriority Claims shall (a) be subject to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (b) be subject to or *pari passu* with any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (c) be subject to sections 510, 549, or 550 of the Bankruptcy Code or (d) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise, except as expressly provided in this Interim Order.

 12. Carve-Out.

 (a) Generally.  The DIP Liens, the DIP Superpriority Claims, the liens of the Prepetition Secured Parties, the Adequate Protection Liens, and the Section 507(b) Claims (defined below) of the Prepetition Secured Parties, shall be subject to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, collectively, the "Carve-Out") from, at the Debtors' discretion, any of loan proceeds of the DIP Facility, Cash Collateral or proceeds resulting from liquidation of

13235690.9

DIP Collateral or Prepetition Collateral: (i) fees payable to the Clerk of Court, and statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, which shall not be limited by any budget ("Statutory Fees"); and (ii) the reasonable fee and expense claims of the respective retained professionals of the Debtors and the Committee, if any, that have been approved by this Court at any time during the Chapter 11 Cases pursuant to sections 330 and 331 of the Bankruptcy Code including any interim approval as set forth in any procedures approved by the Court relating to the interim approval of fees and expenses of such retained professionals (the Court approved professionals of the Debtors and any Committee are collectively referred to as the "Retained Professionals"), which were incurred (A) on and after the Petition Date and through and including the Carve-Out Trigger Date (defined below) in an aggregate amount not exceeding the amount reflected in the Approved Budget, and (B) after the Carve-Out Trigger Date in an aggregate amount not exceeding $500,000 for all Retained Professionals; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court pursuant to sections 330 and 331 of the Bankruptcy Code or otherwise and are not excluded from the Carve-Out under Paragraph 17 of this Interim Order (nothing herein shall waive the right of any party in interest to object to the allowance of any such fees and expenses).

(b)     Carve-Out Trigger Date.  As used herein, the term "Carve-Out Trigger Date" means the date on which the DIP Lenders provide written notice to the Debtors, the U.S. Trustee and counsel to the Committee, if any, that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of an Event of Default under the DIP Loan Documents.

13235690.9

(c)    <u>Reduction of Amounts</u>.    The fixed dollar amount available to be paid under the Carve-Out following the Carve-Out Trigger Date on account of allowed fees and expenses incurred after the Carve-Out Trigger Date as set forth in subsection (a)(B) above shall be reduced, dollar-for-dollar, by the aggregate amount of payments made after the Carve-Out Trigger Date on account of fees and expenses incurred after the Carve-Out Trigger Date to Retained Professionals (whether from Cash Collateral, any proceeds of the DIP Financing, or otherwise).

(d)    <u>Reservation of Rights</u>.    The DIP Lenders reserve their rights to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the Approved Budget.    The payment of any fees or expenses of the Retained Professionals and reasonable expenses of members of the Committee pursuant to the Carve-Out shall not, and shall not be deemed to (i) reduce any Debtors' obligations owed to any of the DIP Lenders, Prepetition Secured Parties or to any holder of a Permitted Prior Senior Lien, or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral or Prepetition Collateral (or their respective claims against the Debtors).    The DIP Lenders and Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals (or of any other entity) incurred in connection with the Chapter 11 Cases or any successor cases, and nothing in this Interim Order or otherwise shall be construed to obligate such parties in any way directly to pay such compensation to or to reimburse such expenses.

13.    <u>Waiver of Right to Surcharge</u>.    Subject to and effective upon entry of the Final Order, in light of (i) the consent of the DIP Lenders to the current payment of administrative expenses of the Debtors' estates in accordance with the Approved Budget, (ii) the agreement of

the DIP Lenders to subordinate their Superpriority Claims to the Carve-Out and (iii) the agreement of the DIP Lenders to subordinate their DIP Liens to the Carve-Out and Permitted Prior Senior Liens, the DIP Lenders and Prepetition Secured Parties are each entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code and (b) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.  Upon entry of the Final Order, except for the Carve-Out, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the Approved Budget) by any of the Debtors or any other person or entity shall be imposed or charged against any or all of the DIP Collateral, the DIP Lenders, the Prepetition Collateral, and the Prepetition Secured Parties or their respective claims or recoveries under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtors, on behalf of their estates, waive any such rights.  It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the Approved Budget, this Interim Order and the DIP Loan Documents, the DIP Lenders and Prepetition Secured Parties have each relied on the foregoing provisions of this Paragraph.  Notwithstanding any approval of or consent to the Approved Budget, except for the Carve-Out, nothing in this Interim Order shall constitute or be deemed to constitute the consent by any of the DIP Lenders and the Prepetition Secured Parties to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Approved Budget) against such party, its claims or its collateral under sections 105(a), 506(c) or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

13235690.9

14.    <u>Automatic Perfection</u>.

(a)    The (i) DIP Liens granted to the DIP Lenders pursuant to this Interim Order and the DIP Loan Documents and (ii) Adequate Protection Liens granted pursuant to this Interim Order to the Prepetition Secured Parties shall be valid, enforceable, and perfected by operation of law upon entry of this Interim Order by this Court without any further action by any party.  Neither the DIP Lenders in respect of the DIP Liens, nor the Prepetition Secured Parties in respect of the Adequate Protection Liens, shall be required to enter into or to obtain any control agreements, landlord waivers (unless required by law or contract), mortgagee waivers, bailee waivers or warehouseman waivers or to give, file or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account Debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office or any similar agency in respect of trademarks, copyrights, trade names or patents with respect to intellectual property) (collectively, the "<u>Perfection Documents</u>"), or obtain consents from any licensor or similarly situated party in interest, or take any other action to validate, record or perfect the DIP Liens granted under the DIP Loan Documents and this Interim Order and the Adequate Protection Liens granted under this Interim Order and approved hereby, all of which are automatically and immediately perfected by the entry of this Interim Order.  If the DIP Lenders or Prepetition Secured Parties, independently or collectively, in each of their sole discretion respectively, choose to obtain, enter into, give, record or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority or enforceability of the DIP Liens and Adequate

21

Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents.  In lieu of optional recording or filing any Perfection Documents, the DIP Lenders, the DIP Agent and the Prepetition Agent may, in each of their sole discretion, choose to record or file a true and complete copy of this Interim Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the DIP Lenders, the DIP Agent or the Prepetition Agent shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date.  In addition, the DIP Lenders, the DIP Agent and the Prepetition Agent may, in their reasonable discretion, require the Debtors to file or record any Perfection Document.  The Debtors are authorized to execute and deliver promptly upon demand to the DIP Lenders, the DIP Agent and the Prepetition Agent all Perfection Documents as they may reasonably request.

(b)     Until the indefeasible payment in full in cash of the DIP Obligations, DIP Collateral and Perfection Documents evidencing liens subordinate to the DIP Liens in the possession, custody or control of the Prepetition Secured Parties (or in the possession, custody or control of agents or bailees of the Prepetition Secured Parties) shall be deemed to be sufficient for the purposes of perfecting the security interests granted in such DIP Collateral and the Prepetition Secured Parties (or their agents or bailees, as applicable) shall, to the extent applicable, be an agent or bailee, as the case may be, on behalf of and for the benefit of the DIP Lenders for the purposes of perfecting the security interests granted in such DIP Collateral. Upon an Event of Default and the request of the DIP Lenders, and subject to the provisions of Paragraph 22 below, the Prepetition Secured Parties (or their agents or bailees, as applicable)

13235690.9

shall transfer, assign and otherwise convey, as applicable, any DIP Collateral and Perfection Documents in their possession, custody or control to the DIP Lenders for the enforcement of rights and remedies under the DIP Loan Documents, and, upon the indefeasible payment in full in cash of all DIP Obligations, the DIP Lenders (or their agents or bailees, as applicable) shall transfer, assign and otherwise convey any Prepetition Collateral and Perfection Documents to the Prepetition Secured Parties.  The authorization, grant, perfection, scope and vesting of the DIP Liens, the DIP Superpriority Claims and the DIP Obligations are fully effectuated by this Interim Order and any security agreements, collateral agreements or other Perfection Documents executed as part of the DIP Loan Documents shall supplement the authorization, grant, perfection, scope and vesting set forth herein as well as the powers and protections accorded to the DIP Lenders, but in no event shall any such security agreement, collateral agreement or other Perfection Document be interpreted as a limitation of such provisions of this Interim Order.

15.    _Stipulations and Waivers_:  Subject to and without prejudice to the rights of any Committee and any other party with standing as set forth in Paragraph 16 below, the Debtors admit, stipulate, and agree to the following, and make the releases and waivers set forth below, on and as of the Petition Date:

(a)    All Prepetition Financing Documents are valid and enforceable by the Prepetition Secured Parties against each of the Debtors in accordance with their respective priorities.  With respect to the Prepetition Collateral, the Prepetition Secured Parties have valid, duly-authorized, perfected, enforceable, non-voidable and binding security interests in, and liens on, substantially all of the Prepetition Collateral as of the Petition Date (with the Prepetition Secured Parties holding junior liens on all Collateral), including the Cash Collateral.  The Debtors further admit, acknowledge and agree that (i) the Prepetition Secured Obligations

13235690.9

constitute legal, valid and binding obligations of each of the Debtors, (ii) no offsets, defenses or counterclaims to the Prepetition Secured Obligations exist, and (iii) no portion of the Prepetition Secured Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(b)    The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Secured Parties with respect to the Prepetition Financing Documents, whether arising at law, in contract or at equity, including any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code.

(c)    As of the Petition Date, the Prepetition Secured Obligations for which the Debtors, without defense, counterclaim or offset of any kind, were truly and justly indebted to the Prepetition Secured Parties are, not less than the amount set forth in paragraph C of this Interim Order, in aggregate principal amount of Prepetition Secured Obligations; plus, in each case, all accrued or hereafter accruing and unpaid interest thereon and any additional amounts, charges, fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Financing Documents) now or hereafter due under the Prepetition Financing Documents.

(d)    Subject to and effective upon the entry of the Final Order, the Debtors do not have, and hereby forever release and waive, any claims, objections, challenges, counterclaims, causes of action, defenses, setoff rights, obligations, rights to subordination or any other liabilities, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees from the beginning of time

13235690.9

through the Petition Date; <u>provided</u> that the Debtors do not waive any rights set forth in Paragraph 22.

16.   <u>Effect of Stipulations on Third Parties</u>.

(a)   <u>Generally</u>.   The admissions, stipulations, agreements, releases, and waivers set forth in the immediately preceding Paragraph 15 and Paragraph C above of this Interim Order (collectively, the "<u>Prepetition Lien and Claim Matters</u>") are and shall be binding on the Debtors, any subsequent trustee (including any chapter 7 trustee), responsible person, examiner with expanded powers, any other estate representative and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, if any, <u>unless</u>, and solely to the extent that, a party-in-interest with standing and requisite authority, (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in Paragraph 17 of this Interim Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "<u>Challenge</u>") by 75 days from entry of this Interim Order for all parties other than a Committee and 60 days from formation of a Committee for the Committee, as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Secured Parties or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline (the "<u>Challenge Deadline</u>"), provided, however, that if a chapter 7 or chapter 11 trustee is appointed prior to the Challenge Deadline, the Challenge Deadline shall be extended for the chapter 7 or chapter 11 trustee until 40 days after their appointment, and (ii) this Court enters judgment in favor of the plaintiff or

13235690.9

movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases, or any other party in interest who commences a Challenge on behalf of the Debtors' estates shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this Paragraph ), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order. The filing of a motion seeking standing to file a Challenge before the Challenge Deadline, which attaches a proposed Challenge, shall extend the Challenge Deadline with respect to that party until three business days after the Court approves the standing motion, or such other time period ordered by the Court in approving the standing motion.

(b)    Binding Effect.  To the extent any Prepetition Lien and Claim Matters are not subject to a Challenge timely and properly commenced by the Challenge Deadline, or to the extent any Challenge does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall pursuant to this Interim Order become binding, conclusive and final on any person, entity or party-in-interest in the Chapter 11 Cases, and their successors and assigns, and in any successor cases for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other

13235690.9

representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding unless such Challenge is successful pursuant to an order or judgment that is final and no longer subject to appeal or further review.  To the extent any such Challenge proceeding is timely and properly commenced, subject to and effective upon entry of the Final Order, the Prepetition Secured Parties shall be entitled to include the related costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending themselves in any such proceeding, pursuant to the Prepetition Financing Documents, except to the extent such Challenge results in a determination that the Prepetition Secured Parties liens or encumbrances are invalid such that they are unsecured as to substantially all the collateral subject to such Challenge and such collateral represents a material portion of the collateral purported to be encumbered by the Prepetition Financing Documents.

17.    <u>Limitation on Use of Proceeds</u>.  Notwithstanding anything in this Interim Order to the contrary, no portion or proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Approved Budget shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Loan Documents or the Prepetition Financing Documents or any security interests, liens or claims granted under this Interim Order, the DIP Loan Documents, or the Prepetition Financing Documents to secure such amounts; (b) asserting any Challenges, claims, actions or causes of action against any of the DIP Lenders, the Prepetition Secured Parties or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; or (c) contesting the Prepetition Lien

27

13235690.9

and Claim Matters; _provided_ that no more than $25,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by the Committee, if any, to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

18.    _Avoidance Action Proceeds_.  Subject to and effective upon entry of the Final Order, (i) Avoidance Action Proceeds shall be DIP Collateral and shall be subject to the DIP Liens and DIP Superpriority Claims, and (ii) subject and subordinate to the DIP Liens and DIP Superpriority Claims, Avoidance Action Proceeds shall be subject to the Adequate Protection Liens and Section 507(b) Claims of the Prepetition Secured Parties.

19.    _Adequate Protection_.  The Prepetition Secured Parties agree, and this Court finds, that the adequate protection provided in this Interim Order (the "_Adequate Protection_"), including, without limitation, in this Paragraph, is reasonable and calculated to protect the interests of the Prepetition Secured Parties.  Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek adequate protection or to seek modification of a grant of Adequate Protection provided in this Interim Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such request.

(a)    _Adequate Protection Liens_.  As adequate protection, the Prepetition Agent, in accordance with sections 361, 363(e) and 364(d) of the Bankruptcy Code, is hereby granted, for the benefit of the Prepetition Secured Parties, valid, binding, enforceable and perfected junior security interests and replacement liens (the "_Adequate Protection Liens_") upon all property of the Debtors whether arising prepetition or postpetition of any nature whatsoever, wherever

28

located, in each case to secure the Prepetition Secured Obligations against, without duplication, the aggregate diminution in value, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral by: (i) the reduction in Prepetition Collateral available to satisfy Prepetition Secured Obligations as a consequence of the priming of the Prepetition Secured Obligations by the DIP Obligations; (ii) depreciation, use, sale, loss, decline in market price or otherwise of the Prepetition Collateral as a consequence of the use, sale or lease of the Prepetition Collateral by the Debtors or as a result of the imposition of the automatic stay; and (iii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition Collateral which is applied in payment of the DIP Obligations or any other obligations or expenses of the Debtors other than Prepetition Secured Obligations, but only to the extent of any decrease in the value of the Prepetition Collateral on account of subsections (i), (ii) and (iii) above, all to the extent authorized by the Bankruptcy Code.  The Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the DIP Obligations, the DIP Liens and the DIP Superpriority Claims, (C) the Permitted Prior Senior Liens.   The Adequate Protection Liens shall not (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (y) subject to any inter-company claim, whether secured or unsecured, of the Debtors or any domestic or foreign subsidiary or affiliate of the Debtors, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise except as expressly provided in this Interim Order and the DIP Loan Documents, including, without limitation, with respect to the Carve-Out, Permitted Prior Senior Liens, DIP Obligations, DIP Liens and DIP Superpriority Claims.

13235690.9

(b)      Section 507(b) Claims.  To the extent that the Prepetition Agent shall hold claims allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of Adequate Protection hereunder, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, is hereby each granted an administrative expense claim pursuant to section 507(b) of the Bankruptcy Code (each, a "Section 507(b) Claim") with priority over all administrative expense claims, priority claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of the kind specified in section 507(b) of the Bankruptcy Code, but in all cases subject and subordinate to the Carve-Out, the Permitted Prior Senior Liens, DIP Obligations, DIP Liens and DIP Superpriority Claims.

(c)      Expense Reimbursement.  The Debtors shall pay the reasonable and documented prepetition and postpetition fees and expenses of the attorneys and advisors (each, a "Prepetition Lenders' Advisor") for the Prepetition Agent and the Prepetition Lenders as provided under the Prepetition Financing Documents.  No Prepetition Lenders' Advisor shall be required to file an application seeking compensation for services or reimbursement of expenses with this Court.  Each Prepetition Lenders' Advisor seeking compensation for services or reimbursement of expenses under the Prepetition Financing Documents, this Interim Order or a Final Order shall transmit a summary invoice to counsel to the Debtors, the U.S. Trustee and the Committee, if any, which summary invoices shall include a general description of the nature of the matters worked on, a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, the year of law school graduation for each attorney; provided, however, that the U.S. Trustee reserves the right to seek copies of invoices containing the detailed time entries of any professional. Any summary invoice may be reasonably redacted

30

by the Prepetition Lenders' Advisor to protect from disclosure any confidential information or information otherwise subject to a protective privilege such as attorney-client privilege or attorney work-product privilege, provided, however, that U.S. Trustee reserves his right to seek to obtain unredacted copies of such invoices.  The Debtors, U.S. Trustee and Committee, if any, shall have ten (10) Business Days in which to raise an objection to the payment of any fees and expenses of such attorneys and advisors.  Upon the expiration of such ten (10) Business Day period, the Debtors shall promptly pay any portion of such fees and expenses to which no objection has been interposed.  To the extent any objection has been interposed and cannot be consensually resolved, the dispute will be scheduled for adjudication at the next regularly-scheduled omnibus hearing in the Chapter 11 Cases.

(d)     All Adequate Protection Liens granted by this Interim Order are subject to being set aside, all Section 507(b) Claims granted by this Interim Order are subject to being disallowed, and all Adequate Protection payments authorized by this Interim Order, including by paragraph 19(c) hereof, are subject to disgorgement, if and to the extent that the underlying Prepetition Lien or claim arising under the Prepetition Financing Documents is successfully challenged pursuant to paragraph 16 of this Interim Order.

20.     <u>Milestones</u>.  As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the milestones attached hereto as <u>Exhibit C</u> (the "<u>Milestones</u>"); provided that Milestones 2(b) and (c) shall only be effective upon entry of the Final Order.  For the avoidance of doubt, the failure of the Debtors to comply with any of the Milestones (a) shall constitute an Event of Default under the DIP Facility and this Interim Order, (b) result in the automatic termination of the Debtors' authority to use Cash Collateral under this Interim Order,

and (c) permit the DIP Agent, subject to Paragraph 22, to exercise the rights and remedies provided for in this Interim Order and the DIP Facility.

21.    <u>Indemnification</u>.  The Debtors shall indemnify the DIP Agent, the DIP Lenders and their affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each, an "<u>Indemnified Person</u>") and hold each of them harmless from and against all costs, expenses (including reasonable fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Debtors or any of their affiliates or shareholders) that relates to the DIP Facility or this Interim Order, including the financing contemplated hereby, the Chapter 11 Cases, or any transactions in connection therewith; provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from such Person's gross negligence, willful misconduct or fraud.  Other than with respect to the proviso at the end of the immediately preceding sentence, nothing herein is meant to limit the scope of any indemnity provided for the benefit of the DIP Lenders in the DIP Loan Documents.

22.    <u>Remedies</u>.  Upon the occurrence of an Event of Default under the DIP Loan Documents, and in each case without further notice, motion or application to, order of, or hearing before, this Court (other than such notice required by this Paragraph), subject to the full funding of the Carve-Out, the DIP Lenders are granted leave to cease making financial accommodations to the Debtors, accelerate any or all of the DIP Obligations and declare such DIP Obligations to be immediately due and payable in full, in cash.  Further, the DIP Agent may, and at the request

of the Required Lenders shall, exercise all rights and remedies under the DIP Loan Documents and enforce all other rights and remedies under applicable law.  In that regard, the automatic stay provisions of Bankruptcy Code section 362 are modified to the extent necessary to permit the DIP Agent to exercise all rights and remedies under the DIP Loan Documents upon the occurrence of an Event of Default and after the giving of three (3) Business Days' (any such three (3) Business Day period of time, the "Default Notice Period") written notice by the DIP Agent to the Debtors, the Committee, if any, the U.S. Trustee, and their respective counsels of the occurrence of such Event of Default unless such Event of Default is cured by the Debtors prior to the expiration of such Default Notice Period; provided, that, during the Default Notice Period, the Debtors shall be entitled to continue to use Cash Collateral in accordance with the terms of this Interim Order and in accordance with the Approved Budget.  The Debtors may seek an emergency hearing for the purpose of determining whether an Event of Default has occurred and is continuing.

23.     Access to DIP Collateral.  Subject to and effective upon entry of the Final Order, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Lenders contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Loan Documents, the DIP Lenders may, subject to the applicable notice provisions, if any, in this Interim Order and any separate agreement by and between such landlord and the DIP Lenders, and subject to applicable non-bankruptcy law, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors'

rights and privileges as lessee under such lease without interference from the landlords thereunder.  Nothing herein shall require the DIP Lenders to assume any lease as a condition to the rights afforded to the DIP Lenders in this Paragraph.

24.    <u>Insurance Policies</u>.    Effective as of entry of this Interim Order, the Debtors consent to, and the DIP Agent shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to DIP Collateral, as applicable.

25.    <u>Successors and Assigns</u>.    This Interim Order, the DIP Credit Agreement and the other DIP Loan Documents shall be binding upon all parties in interest in these Chapter 11 Cases, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other estate representative.

26.    <u>Survival</u>.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any subsequent order (other than entry of any subsequent Final Order which shall supersede this Interim Order), and the rights, remedies, powers, privileges, liens and priorities of the DIP Lenders and the Prepetition Secured Parties provided for in this Interim Order, in any DIP Loan Document and any Prepetition Financing Document shall not be modified, altered or impaired in any manner without their consent (which consent shall not be unreasonably withheld) by any order, including any order (i) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases (and, to the extent not indefeasibly paid in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, each of the Debtors having hereby waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code), (ii) converting any of the Chapter 11 Cases to a Chapter 7 case, (iii) dismissing any of the Chapter 11 Cases, or (iv) any superseding cases under the Bankruptcy

13235690.9

Code.  The terms and provisions of this Interim Order as well as the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, the DIP Loan Documents, and the Adequate Protection Liens shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their priority as provided by this Interim Order and the DIP Loan Documents to the maximum extent permitted by law until all of the DIP Obligations are indefeasibly paid in full, in cash.

27.     Good Faith.  The DIP Facility, the use of Cash Collateral, and the other provisions of this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents have been negotiated in good faith and at arm's length among the Debtors, the DIP Lenders and the Prepetition Secured Parties, and the extension of the financial accommodations to the Debtors by the DIP Lenders and Prepetition Secured Parties pursuant to this Interim Order and the DIP Loan Documents have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code.  The DIP Lenders and the Prepetition Secured Parties are entitled to, and are hereby granted, the full protections of section 364(e) of the Bankruptcy Code.

28.     No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lenders and Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.   Any consent, modification, declaration of default, or exercise of remedies or non-exercise of remedies under or in connection with this Interim Order or the DIP Loan Documents shall require the approval of the DIP Lenders and shall not be deemed a waiver or relinquishment of any of the rights of the DIP Lenders.  Except as expressly set forth herein, nothing contained in this Interim Order (including without limitation, the authorization to use any Cash Collateral) shall impair, prejudice or modify any rights, claims or defenses available in law or equity to the DIP Lenders or the Prepetition

13235690.9

Secured Parties, including, without limitation, the right (a) to request conversion of any of the Debtors' Chapter 11 Cases to Chapter 7, (b) to seek to terminate the exclusive rights of the Debtors to file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) to object to the fees and expenses of any Retained Professionals and (d) to seek relief from the automatic stay.  All such rights, claims and defenses, and the rights, objections and defenses of all parties in connection therewith, are hereby reserved.

29.    _Additional Defaults_.  In addition, and without limitation of the Events of Default set forth in and defined in the DIP Loan Documents or this Interim Order, it shall constitute an "Event of Default" under the DIP Loan Documents if an order is entered dismissing or converting the Chapter 11 Cases under section 1112 of the Bankruptcy Code or appointing a Chapter 11 trustee or an examiner or other estate representative with expanded powers.  Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the DIP Lenders and the Prepetition Secured Parties under this Interim Order and shall preserve the Carve-Out.  It shall be an Event of Default for the sale of substantially all of the assets of the Debtors, unless, upon the closing of such transaction, all liens securing the DIP Obligations and the Prepetition Secured Obligations (in their respective priority) are transferred to the proceeds of such sale.  If an order dismissing the Chapter 11 Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that (a) the DIP Liens and the DIP Superpriority Claims granted to the DIP Lenders hereunder and in the DIP Loan Documents, as the case may be, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and indebtedness owing to the DIP

13235690.9

Lenders under the DIP Loan Documents shall have been indefeasibly paid in full in cash and the DIP Lenders' obligations and commitments under the DIP Loan Documents shall have been terminated.

30.      Order Governs.  In the event of any conflict between the provisions of this Interim Order and the DIP Loan Documents, the Motion, or any supporting documents, the provisions of this Interim Order shall control and govern to the extent of such conflicts.

31.      Right to Credit Bid.  Pursuant to section 363(k) of the Bankruptcy Code, (i) the DIP Agent shall have the exclusive right to use the DIP Obligations, DIP Liens and DIP Superpriority Claim to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral, and (ii) the Prepetition Agent (or its designee or subagent, including any Prepetition Lender or the DIP Agent) shall have the exclusive right to use the Prepetition Secured Obligations and the Adequate Protection Liens and Section 507(b) Claims to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.

32.      No Marshaling.  Subject to and effective upon entry of the Final Order, none of the DIP Lenders, DIP Collateral, Prepetition Secured Parties or Prepetition Collateral shall be subject to the doctrine of marshaling or any similar doctrine or law of any jurisdiction requiring the recovery upon or application to any indebtedness of any collateral or proceeds in any particular order or action.

33.      Waiver of Requirement to File Proofs of Claim.

(a)      The DIP Lenders shall not be required to file proofs of claim in the Chapter 11 Cases or, subject to and effective upon the entry of the Final Order, any successor chapter 7 case, in order to maintain their claims for payment of the DIP Obligations under the applicable DIP Loan Documents.  The statements of claim in respect of the DIP Obligations set

forth in this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

(b)    The Prepetition Secured Parties shall not be required to file proofs of claim in the Chapter 11 Cases or, subject to and effective upon the entry of the Final Order, any successor chapter 7 case, in order to maintain their respective claims for payment of the Prepetition Obligations under the applicable Prepetition Financing Documents.  The statements of claim in respect of the Prepetition Obligations set forth in this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

34.    <u>Orchids Lessor SC</u>.  Notwithstanding anything to the contrary herein or in the Motion, Orchids Lessor SC is not a borrower under or guarantor of the DIP Loan, is not pledging any of its assets as collateral to secure the DIP Loan, and is not otherwise a party to any of the DIP Loan Documents.  Likewise, the Prepetition Secured Parties are not receiving a replacement or adequate protection lien against or any other rights with respect to Orchids Lessor SC or its assets.

35.    Notwithstanding anything to the contrary in this Interim Order, any interest the DIP Lenders and the Prepetition Secured Parties may have in any adequate assurance deposit made by the Debtors pursuant to section 366 of the Bankruptcy Code shall be subordinate to interests of the Debtors' utility providers until such time as the adequate assurance deposit is returned to the Debtors, or as otherwise ordered by the Court.

36.    <u>Headings</u>.  The headings in this Interim Order are for reference purposes only and will not in any way affect the meaning and interpretation of the terms of this Interim Order.

37.    <u>Immediate Effect of Order</u>.  This Interim Order shall take effect immediately upon execution hereof, and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Order.  All objections to the entry of this Interim Order have been withdrawn or overruled and the Motion is approved on an interim basis on the terms and conditions set forth herein.  The Debtors shall promptly mail copies of this Interim Order to the Notice Parties and to counsel to the Committee, if any.

38.    <u>Final Hearing</u>.  The Final Hearing is scheduled for May 1, 2019, at 10:30 a.m. (prevailing Eastern Time) before this Court.  Any objections by creditors or other parties in interest to any provisions of this Interim Order or the Final Order shall be deemed waived unless timely filed and served in accordance with this Paragraph.  The Debtors shall promptly serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid or overnight mail upon the Notice Parties and any Committee (if and when it is appointed); all state taxing authorities in the states in which the Debtors have any tax liabilities; any federal or state regulatory authorities governing the Debtors' industry; all landlords of the Debtors; and  the U.S. Attorney's Office and Delaware Attorney General.  The notice of the entry of this Interim Order and the Final Hearing shall state that objections to the entry of the Final Order shall be filed with this Court by no later than 4:00 p.m. (prevailing Eastern Time) on April 24, 2019 (the "<u>Objection Deadline</u>"), and  served on: (i) counsel for the Debtors, Polsinelli, 222 Delaware Avenue, Suite 1101 Wilmington, DE 19801, Attn.  Jerry  L.  Switzer,  Jr.  and  Christopher  A.  Ward  (jswitzer@polsinelli.com; cward@polsinelli.com) ; (ii) counsel for the Prepetition Agent, DIP Lenders and DIP Agent, Winston  &  Strawn  LLP,  35  Wacker  Dr.,  Chicago,  IL  60601,  Attn.  Dan  McGuire

(dmcguire@winston.com); Fox Rothschild LLP, Citizens Bank Center, 919 North Market Street, Suite 300, Wilmington, DE 19899-2323, Attn. Seth Niederman (sniederman@foxrothschild.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Juliet Sarkessian (juliet.m.sarkessian@usdoj.gov); and (iv) counsel to the Committee, if any.

**Dated: April 4th, 2019**
**Wilmington, Delaware**

40

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**