## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ORCHIDS PAPER PRODUCTS COMPANY, *et al.*,[1] | Case No. 19-10729 (MFW) |
| Debtors. | Jointly Administered |
| | **Re: Docket Nos. 25 & 179** |

### ORDER (I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (III) GRANTING RELATED RELIEF

Upon consideration of the *Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Potential Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter Into the Option Agreement and the Stalking Horse Agreement, (E) Approving Bid Protections, (F) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (G) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* (the "**Sale Motion**") [Docket No. 25] of the above-captioned debtors and debtors in possession (the "**Debtors**"), which requests an order (this "**Sale Order**") that, among other things, authorizes and approves (a) the sale, assignment,

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Orchids Paper Products Company, a Delaware corporation (6944), Orchids Paper Products Company of South Carolina, a Delaware corporation (7198), and Orchids Lessor SC, LLC, a South Carolina limited liability company (7298). The location of the Debtors' mailing address is 201 Summit View Drive, Suite 110, Brentwood, Tennessee 37027.

transfer, conveyance and delivery of substantially all of the Debtors' assets identified and defined as "Acquired Assets" in the Asset Purchase Agreement (including all related exhibits and schedules) (as may be amended, modified or supplemented in accordance with its terms, the "**Agreement**")[2] a copy of which is attached hereto as **<u>Exhibit A</u>** among the Debtors and Cascades Holdings US Inc. ("**Cascades**" or the "**Purchaser**"), and (b) the assumption and assignment of certain unexpired leases and executory contracts identified and defined as "Assigned Contracts" in the Agreement, in each case, effective as of the Closing on the Closing Date, all as more fully set forth in the Motion; this Court having entered the *Order (I) Approving Bid Procedures in Connection with the Potential Sale of Substantially All of the Debtors' Assets, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtors to Enter Into the Option Agreement and the Stalking Horse Agreement, (V) Approving Bid Protections, (VI) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (VII) Granting Related Relief* on May 20, 2019 [Docket No. 179]; this Court having reviewed and considered the Sale Motion and any objections thereto; this Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Sale Motion at a hearing before this Court (the "**Sale Hearing**"); upon the full record of these Chapter 11 Cases; it appearing no other notice need be given; it further appearing the legal and factual bases set forth in the Sale Motion and the record made at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefor:

THE COURT FINDS AND DETERMINES THAT:

---

[2] Except as otherwise defined herein, or where reference is made to a definition in the Sale Motion, all capitalized terms shall have the meanings ascribed to them in the Agreement.

69071674.7

**Jurisdiction, Final Order, and Statutory Predicates**

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

C.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors have confirmed their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), to the entry of a final order by this Court in connection with the Sale Motion, to the extent it is later determined the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.     The bases for the relief requested in this Motion are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, 6004-1, and 9013-1(m).

3

F.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds there is no just reason for delay in the implementation of this Sale Order, and waives any stay and expressly directs entry of judgment as set forth herein.

## Retention of Jurisdiction

G.      It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Agreement, including its related documents, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes involving the Debtors concerning or relating in any way to, or affecting, the Sale or the transactions contemplated in the Agreement, and related documents.

## Corporate Authority; Consents and Approvals

H.      Each of the Debtors has, to the extent necessary or applicable, (a) the full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (b) all corporate authority necessary to consummate the transaction contemplated by the Agreement, and (c) taken all corporate action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtors to consummate the Sale, the Agreement, or the transactions contemplated thereby.

69071674.7

### Notice of Sale, Auction, Sale Hearing,
### Agreement, and Assumption and Assignment

I.       Actual written notice of the Sale Motion, the Sale, the Auction, the Sale Hearing, and the transactions contemplated thereby, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, has been afforded to all known interested entities and parties, including, without limitation, the following entities and parties: (a) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (b) the holders of the twenty (20) largest unsecured claims against the Debtors; (c) all of the Debtors' other creditors; (d) counsel to the DIP Lender and the Prepetition Secured Lender; (e) counsel to the Stalking Horse Bidder; (f) all other parties who have expressed a written interest in the Assets; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) all state and local taxing authorities with an interest in the Assets; (j) the Attorney General for the State of Delaware; (k) the Securities and Exchange Commission; (l) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (m) all parties known or reasonably believed to have asserted an Interest in the Assets; (n) the counterparties to the Contracts (the "**Contract Counterparties**"); (o) the Debtors' insurance carriers; (p) all parties entitled to notice pursuant to Local Rule 9013-1(m); and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002. [Docket Nos. 52, 189 and 200.]

J.       In addition, the Debtors have caused notice of the Sale Motion, the Sale, the Auction, and the Sale Hearing to be (i) published in *The New York Times (National Edition)* on May 22, 2019 [Docket No. 188.], and (ii) posted on the website maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, available at http://cases.primeclerk.com/OrchidsPaper, as required by the Bid Procedures Order. The

5

foregoing notice was sufficient and reasonably calculated under the circumstances to reach entities whose identities are not reasonably ascertainable by the Debtors.

K.    In accordance with the provisions of the Bid Procedures Order, the Debtors have served notice upon the Contract Counterparties: (a) that the Debtors seek to assume and assign to the Purchaser the Assigned Contracts on the Closing Date (as defined in the Agreement); and (b) of the relevant Cure Amounts (as defined below).  [Docket Nos. 189, 201, 269, 271 and 309.] Each of the Contract Counterparties has had an adequate opportunity to object to the Cure Amounts set forth in the notice and to the assumption and assignment to the Purchaser of the applicable Assigned Contracts (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the counterparty from accepting performance by, or rendering performance to, the Purchaser (or its designee) for purposes of section 365(c)(1) of the Bankruptcy Code). All objections, responses, or requests for adequate assurance, if any, have been resolved, overruled, or denied, as applicable, except as expressly set forth in this Sale Order.

L.    On June 12, 2019, (a) RDP 27 LLC ("**RDP 27**") and Rural Development Partners LLC ("**RDP**") (the "**RDP Parties**"), (b) USBCDE Sub-CDE 146, LLC ("**USBSUBCDE 146**"), USBCDC Investment Fund 158, LLC (the "**Fund**"), USBCDE LLC ("**USBCDE**") and U.S. Bancorp Community Development Corporation ("**USBCDC**") (USBSUBCDE 146, the Fund, USBCDE and USBCDC, collectively, the "**USBCDC Parties**") (the RDP Parties and the USBCDC Parties, collectively, the "**NMTC Creditors**") filed their *Objection and Reservation of Rights to the Cure Amounts Proposed in, and Other Aspects of, the Debtors' Notice to Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases Regarding Cure Amounts and Possible Assignment to Stalking Horse Bidder or Such other Successful*

*Bidder at Auction* (Docket No. 228) (the "**NMTC Cure Objection**").  On June 24, 2019, the RDP Parties and the USBCDC Parties filed their *Objection and Reservation of Rights to the Sale Proposed by the Sale Motion* (Docket Entry No. 278) (the "**NMTC Creditors' Sale Objection**").  The NMTC Cure Objection and the NMTC Sale Objection are resolved as set forth below.

M.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Motion regarding the sales process, including, without limitation: (i) determination of final Cure Amounts; and (ii) approval and authorization to serve notice of the Auction and Sale Hearing.

N.      As evidenced by the affidavits of service and affidavits of publication previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale, the Auction, the Sale Hearing, and the transactions contemplated thereby, including, without limitation, the assumption and assignment of the Assigned Contracts to the Purchaser, has been provided in accordance with the Bid Procedures Order and Bankruptcy Code sections 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014. The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale, the Auction, the Sale Hearing, or the assumption and assignment of the Assigned Contracts to the Purchaser, including in respect of establishing Cure Amounts for the Contracts, is or shall be required.

O.      The disclosures made by the Debtors concerning the Sale Motion, the Agreement, the Auction, the Sale Hearing, the Sale, and the assumption and assignment of the Assigned Contracts to the Purchaser were good, complete, and adequate.

69071674.7

P.     A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion, and the relief requested therein (including, without limitation, the assumption and assignment of the Assigned Contracts to the Purchaser and any Cure Amounts relating thereto), has been afforded to all interested persons and entities, including the applicable notice parties.

### Auction

Q.     The Debtors conducted the Auction on **June 27, 2019** in connection with, and has otherwise complied in all respects with, the Bid Procedures Order. The Auction process set forth in the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Assets. The Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Assets. The Auction was transcribed and the transcript of the Auction was introduced into evidence at the Sale Hearing. At the conclusion of the Auction, the Debtors determined in the exercise of their good faith business judgment that the Purchaser submitted the highest and best bid for the Assets and, accordingly, the Purchaser was determined to be the Successful Bidder for the Assets.

### Good Faith of the Purchaser

R.     As demonstrated by the representations of counsel and other evidence proffered or adduced at the Sale Hearing, the Debtors and their advisors marketed the Assets to secure the highest and best offer. The terms and conditions set forth in the Agreement are fair, adequate, and reasonable, including the amount of the Purchase Price, which is found to constitute reasonably equivalent and fair value.

S.     The Purchaser is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of

69071674.7

incorporators, directors, managers, controlling shareholders, or other insider of the Debtors exist between the Purchaser and the Debtors.

T.      The Debtors and the Purchaser extensively negotiated the terms and conditions of the Agreement in good faith and at arm's length. The Purchaser is purchasing the Acquired Assets and has entered into the Agreement in good faith and is a good faith buyer within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) the Purchaser recognized the Debtors were free to deal with any other party interested in purchasing the Acquired Assets; (ii) the Purchaser agreed to subject its bid to competitive bidding at the Auction; (iii) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (iv) the Purchaser has not violated Bankruptcy Code section 363(n) by any action or inaction; (v) no common identity of directors or controlling stockholders exists between the Purchaser and the Debtors; and (vi) the negotiation and execution of the Agreement was at arm's length and in good faith.

U.      Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Agreement to be avoided under Bankruptcy Code section 363(n). The Debtors and the Purchaser were represented by their own respective counsel and other advisors during such arm's length negotiations in connection with the Agreement and the Sale.

V.      No party has objected to the Sale, the Agreement, or the Auction on the grounds of fraud or collusion.

W.       Accordingly, the Purchaser is purchasing the Acquired Assets in good faith and is a good-faith buyer within the meaning of Bankruptcy Code section 363(m). The Purchaser is therefore entitled to all of the protections afforded under Bankruptcy Code section 363(m).

### Highest and Best Offer

X.       The Debtors conducted a sale process in accordance with, and have otherwise complied in all respects with, the Bid Procedures Order. The sale process set forth in the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets. The Auction was duly noticed in a non-collusive, fair, and good-faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Assets.

Y.       (i) The Debtors and their advisors engaged in a robust and extensive marketing and sale process, both prior to the commencement of these Chapter 11 Cases and through the postpetition sale process in accordance with the Bid Procedures Order and the sound exercise of the Debtors' business judgment; (ii) the Debtors conducted a fair and open sale process; (iii) the sale process, the Bid Procedures, and the Auction were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any entity that either expressed an interest in acquiring the Assets, or who the Debtors believed may have had an interest in acquiring the Assets, to make an offer to purchase the Debtors' assets, including, without limitation, the Acquired Assets; (iv) the Debtors and the Purchaser have negotiated and undertaken their roles leading to the entry into the Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner; and (v) the sale process conducted by the Debtors resulted in the highest or otherwise best value for the Assets for the Debtors and their estates, was in the best interest of the Debtors, their estates, their creditors, and all parties in interest, and any other transaction

69071674.7

would not have yielded as favorable a result. There is no legal or equitable reason to delay consummation of the Agreement and the transactions contemplated therein.

Z.      The Agreement constitutes the highest and best offer for the Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

AA.      The Agreement represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these Chapter 11 Cases. No other entity or group of entities has offered to purchase the Assets for greater overall value to the Debtors' estates than the Purchaser.

BB.      Approval of the Sale Motion and the Agreement and the consummation of the transaction contemplated thereby are in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

CC.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Assets prior to, and outside of, a plan of reorganization.

DD.      Entry of an order approving the Agreement and all the provisions thereof is a necessary condition precedent to Purchaser's consummation of the Sale, as set forth in the Agreement.

**No Fraudulent Transfer or Merger**

EE.      The consideration provided by the Purchaser pursuant to the Agreement (a) is fair and reasonable, (b) is the highest or best offer for the Assets, and (c) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent

11

Transfer Act, the Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

FF.     Neither the Purchaser nor its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies, or partners (collectively, the "**Purchaser Parties**") is a mere continuation of the Debtors or their estates, and there is no continuity of enterprise between any Purchaser Party and the Debtors based on the Sale, the Agreement or this Sale Order. No Purchaser Party shall be deemed to be holding itself out to the public as a continuation of the Debtors or their respective estates based on the Sale, the Agreement or this Sale Order. No Purchaser Party is a successor to the Debtors or their estates, and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Purchaser (or any other Purchaser Party) and the Debtors.

## Validity of Transfer

GG.     The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any of its states, territories, or possessions, or the District of Columbia. Neither the Debtors nor the Purchaser are entering into the transactions contemplated by the Agreement fraudulently, for the purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims.

HH.     The Debtors' right, title, and interest in the Acquired Assets constitutes property of the Debtors' estates, which is vested in the Debtors' estates pursuant to section 541(a) of the Bankruptcy Code.  Subject to Bankruptcy Code section 363(f) (addressed below), the transfer of the Acquired Assets to the Purchaser will be, as of the Closing Date, a legal, valid, and effective

12

transfer of all right, title, and interest of the Debtors in and to the Acquired Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Acquired Assets free and clear of (i) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and Encumbrances (as defined in the Agreement) relating to, accruing, or arising any time prior to the Closing Date (collectively, the "**Liens**"), and (ii) all debts (as that term is defined in section 101(12) of the Bankruptcy Code) arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trusts, security interests or similar interests, conditional sale or other title retention agreements and other similar impositions, restrictions on transfer or use, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter ego liability, suits, defenses, credits, allowances, options, limitations, causes of action, choses in action, rights of first refusal or first offer, rebate, chargeback, credit, or return, proxy, voting trust or agreement or transfer restriction under any shareholder or similar agreement or encumbrance, easements, rights of way, encroachments, Liabilities (as defined in the Agreement), and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, whether known or unknown, legal or equitable, mature or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to Claims (as defined below) and Liens (A) that purport to give any party a right or option to effect a setoff (except to the extent such setoff was exercised prior to the Petition Date)

against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Purchaser's interests in the Acquired Assets, or any similar rights, if any, or (B) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attribute of ownership) collectively, as defined in this clause (ii), the "**Claims**" and, together with the Liens and other interests of any kind or nature whatsoever, the "**Interests**"), relating to, accruing or arising any time prior to the entry of this Sale Order, with the exception of the Assumed Liabilities and the Permitted Encumbrances (each as defined in the Agreement for conveyance purposes) to the extent set forth in the Agreement, and any covenants set forth in the Agreement.

II.    For the avoidance of doubt, the terms "Liens" and "Claims," as used in this Sale Order, include, without limitation, rights with respect to any Liens and Claims:

(a)    that purport to give any party a right of setoff (except to the extent such setoff was exercised prior to the Petition Date) against, or a right or option to affect any forfeiture, modification, profit-sharing interest, right of first refusal, purchase or repurchase writer option, or termination of, any of the Debtors' or the Purchaser's interest in the Acquired Assets, or any similar rights; or

(b)    in respect of taxes, restrictions, rights of first refusal, charges of interest of any kind and nature, if any, and including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any of the attributes of ownership relating to, accruing, or arising at any

14

time prior to the Closing Date, with the exception of Permitted Encumbrances and Assumed Liabilities (as those terms are defined in the Agreement) that are expressly assumed by the Purchaser pursuant to the Agreement.

JJ.    For the further avoidance of doubt, the Purchaser is expressly assuming responsibility for, and the Acquired Assets will be transferred subject to, the Cure Amounts and any obligations arising at or after the Closing Date under the Assigned Contracts, as set forth in the Agreement.

### Section 363(f) Is Satisfied

KK.    The conditions of Bankruptcy Code section 363(f) have been satisfied in full; therefore, the Debtors may sell the Acquired Assets free and clear of any Interests in the property other than any Permitted Encumbrances and Assumed Liabilities.

LL.    The Purchaser would not have entered into the Agreement, and would not consummate the transactions contemplated thereby, if the Sale of the Acquired Assets to the Purchaser and the assumption of any Assumed Liabilities by the Purchaser were not free and clear of all Interests, other than Permitted Encumbrances and the Assumed Liabilities, or if the Purchaser would, or in the future could, be liable for any of such Interests (other than the Permitted Encumbrances and the Assumed Liabilities). Unless otherwise expressly included in the Permitted Encumbrances or the Assumed Liabilities or otherwise expressly provided in the Agreement, the Purchaser shall not be responsible for any Interests against the Debtors, their estates, or any of the Acquired Assets, including in respect of the following: (a) any labor or employment agreement other than the collective bargaining agreements with the United Steelworkers the Purchaser is assuming pursuant to the Agreement; (b) all mortgages, deeds of

trust, and other security interests; (c) intercompany loans and receivables among the Debtors and any of their affiliates (as defined in Bankruptcy Code section 101(2)); (d) any other environmental, employee, workers' compensation, occupational disease, or unemployment- or temporary disability-related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) the unemployment compensation laws or any other similar state laws, or (xii) any other state or federal benefits or claims relating to any employment with the Debtors or their predecessor, if any, (xiii) Claims or Liens arising under any Environmental Law (as defined in the Agreement) with respect to the Debtors' business, Excluded Liabilities (as defined in the Agreement), the Acquired Assets, the Excluded Assets (as defined in the Agreement), or any assets owned or operated by the Debtors or any corporate predecessor of the Debtors, at any time prior to the Closing Date, (xiv) any bulk sales or similar law, (xv) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and (xvi) any statutory or common-law bases for successor liability.

MM.    The Debtors may sell the Acquired Assets free and clear of all Interests in such property of any entity other than the Debtors' estates, including, without limitation, any Liens and Claims against the Debtors, their estates, or any of the Acquired Assets (other than the Permitted Encumbrances and Assumed Liabilities) because, in each case, one or more of the

standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied. Those holders of Interests in the Acquired Assets, including, without limitation, holders of Liens and Claims against the Debtors, their estates, or any of the Acquired Assets, who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2). All other holders of Interests (except to the extent such Interests are Permitted Encumbrances or Assumed Liabilities) are adequately protected by having their Interests, if any, in each instance against the Debtors, their estates, or any of the Acquired Assets, attached to the net proceeds of the Sale received by the Debtors ultimately attributable to the Acquired Assets in which such party alleges an Interest, in the same order of priority, with the same validity, force, and effect that such Interests had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

**Assumption and Assignment of the Assigned Contracts**

NN.    The assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order is integral to the Agreement and is in the best interest of the Debtors and their estates, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

OO.    Unless otherwise agreed and stated on the record at the Sale Hearing and except as expressly provided herein, the respective amounts set forth under the "Cure Amount" on **Exhibit B** attached hereto reflects the sole amounts necessary under Bankruptcy Code section 365(b) to cure all monetary defaults and pay all pecuniary losses under the Assigned Contracts (collectively, the "**Cure Amounts**"), and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to the Purchaser of the Assigned Contracts.

69071674.7

PP.    Pursuant to the terms of the Agreement, the Purchaser shall: (a) to the extent necessary, cure or provide adequate assurance of cure, of any default existing prior to the date hereof with respect to the Contracts, within the meaning of Bankruptcy Code sections 365(b)(1)(A) and 365(f)(2)(A); and (b) to the extent necessary, provide compensation or adequate assurance of compensation to any Contract Counterparty for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assigned Contracts, within the meaning of Bankruptcy Code sections 365(b)(1)(B) and 365(f)(2)(A).

QQ.    As of the Closing Date, subject only to the payment of the Cure Amounts, as determined in accordance with the procedures identified in the Sale Motion and its accompanying and related documents, each of the Assigned Contracts will be in full force and effect and enforceable by the Purchaser against any Contract Counterparty thereto in accordance with its terms.

RR.    The Debtors have, to the extent necessary, satisfied the requirements of Bankruptcy Code sections 365(b)(1) and 365(f) in connection with the Sale, the assumption and assignment of the Assigned Contracts, and shall upon assignment thereto on the Closing Date, be relieved from any liability for any breach thereof.

SS.    The Purchaser has demonstrated it has the financial wherewithal to fully perform and satisfy the obligations under the Assigned Contracts as required by Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B). Pursuant to Bankruptcy Code section 365(f)(2)(B), the Purchaser has provided adequate assurance of future performance of the obligations under the Assigned Contracts.

TT.    The Purchaser's promise to pay the Cure Amounts and to perform the obligations under the Assigned Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

UU.    Any objections to the assumption and assignment of any of the Assigned Contracts to the Purchaser, to the extent not previously resolved, are hereby overruled or withdrawn except as expressly set forth herein. Any objections to the Cure Amounts are hereby overruled or withdrawn. To the extent any Contract Counterparty failed to timely object to its Cure Amount or to the assumption and assignment of its Assigned Contracts to the Purchaser, such Contract Counterparty is deemed to have consented to such Cure Amount and the assignment of its Assigned Contract(s) to the Purchaser.

VV.    No sections or provisions of the Assigned Contracts that purport to (a) prohibit, restrict or condition the Debtors' assignment of the Assigned Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor parties to such Assigned Contracts; (b) authorize the termination, cancellation or modification of the Assigned Contracts based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; or (c) declare a breach or default or otherwise give rise to a right of termination as a result of any change in control in respect of the Debtors, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code section 365(f) and/or are otherwise unenforceable under Bankruptcy Code section 365(e).

WW.    The (i) transfer of the Acquired Assets to the Purchaser and (ii) assignment to the Purchaser of the Assigned Contracts, will not subject the Purchaser or any of its affiliates or designees to any liability whatsoever that arises prior to the Closing or by reason of such transfer

69071674.7

under the laws of the United States, any state, territory, or possession thereof, or the District of

Columbia, based, in whole or in part, directly or indirectly, on any theory of antitrust, successor,

transferee, derivative, or vicarious liability or any similar theory and/or applicable state or

federal law or otherwise.

### Sound Business Purpose for the Sale

XX.    Good and sufficient reasons for approval of the Agreement and the Sale have

been articulated. The relief requested in the Sale Motion is in the best interests of the Debtors,

their estates, their creditors, and other parties in interest.

YY.    The Debtors have demonstrated both (a) good, sufficient, and sound business

purposes and justifications for approving the Agreement and (b) compelling circumstances for

the sale outside the ordinary course of business, pursuant to Bankruptcy Code section 363(b)

before, and outside of, a plan of reorganization, in that, among other things, the immediate

consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of

the Debtors' estates, and the Sale will provide the means for the Debtors to maximize

distributions to creditors.

### Compelling Circumstances for an Immediate Sale

ZZ.    To maximize the value of the Acquired Assets and preserve the viability of the

business to which the Acquired Assets relate, it is essential the Sale of the Acquired Assets occur

promptly. Therefore, time is of the essence in effectuating the Agreement and consummating the

Sale. As such, the Debtors and the Purchaser intend to close the Sale of the Acquired Assets as

soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and a

good, sufficient and sound business purpose and justification for immediate approval and

consummation of the Agreement. Accordingly, there is sufficient cause to waive the stay provided in Bankruptcy Rules 6004(h) and 6006(d).

AAA. Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Agreement, the proposed Sale of the Acquired Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

BBB. The consummation of the Sale and the assumption and assignment of the Assigned Contracts is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

CCC. The Sale does not constitute a *sub rosa* or *de facto* chapter 11 plan for which approval has not been sought without the protections a disclosure statement would afford, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in Bankruptcy Code sections 1125 and 1129; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities. Accordingly, the Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating chapter 11 plan for the Debtors.

DDD. At the Closing, Orchids Investment LLC, as Prepetition Secured Lender and DIP Lender (as such terms are defined in the DIP Order), has agreed to execute such documents and take such other actions as may be reasonably necessary to (1) release its Interests in and to any

69071674.7

and all assets, including, without limitation, any Acquired Assets, owned and held by the Debtors' non-debtor affiliates, Orchids Mexico (DE) Holdings, LLC, a Delaware limited liability company, Orchids Mexico (DE) Member, LLC, a Delaware limited liability company, and OPP Acquisition Mexico, S. de R.L. de C.V., a *sociedad de responsabilidad limitada de capital variable* organized under the laws of Mexico (collectively, the "**Non-Debtor Affiliates**"), as well as the Debtors' direct and indirect stock, membership, and other ownership interests in and to the Non-Debtor Affiliates, as such Interests may have been recorded or may otherwise exist and (2) release its claims against the Non-Debtor Affiliates.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions.

1.      **Relief Granted.** The relief requested in the Sale Motion and the transactions contemplated thereby and by the Agreement are approved for the reasons set forth in this Sale Order and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.

2.      **Objections Overruled.** All objections, statements, and reservations of rights to the Sale Motion and the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including, without limitation, any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits, with prejudice, except as expressly set forth herein. Those parties who did not object, or withdrew their objections, to the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).

69071674.7

3.      **Prior Findings and Conclusions Incorporated.** This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

4.      **Sale Order and Agreement Binding on All Parties.** This Sale Order and the Agreement shall be binding in all respects upon all creditors of and holders of equity interests in the Debtors (whether known or unknown), agents, trustees and collateral trustees, holders of Interests in, against, or on the Acquired Assets, or any portion thereof, all Contract Counterparties and any other non-debtor parties to any contracts with the Debtors (whether or not assigned), all successors and assigns of the Debtors, and any subsequent trustees appointed in the Chapter 11 Cases or upon a conversion of the Chapter 11 Cases to one or more cases under chapter 7 of the Bankruptcy Code and shall not be subject to rejection or unwinding. Nothing in any chapter 11 plan confirmed in the Chapter 11 Cases, the confirmation order confirming any such chapter 11 plan, any order approving the wind down or dismissal of the Chapter 11 Cases, or any order entered upon the conversion of the Chapter 11 Cases to one or more cases under chapter 7 of the Bankruptcy Code or otherwise shall conflict with or derogate from the provisions of the Agreement or this Sale Order.

**Approval of the Agreement**

5.      **Agreement Approved.** The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

6.      **Authorization to Consummate Transactions.** Pursuant to Bankruptcy Code sections 363(b) and (f), the Debtors are authorized, empowered, and directed to use their reasonable best efforts to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement, (b) close the Sale as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform

23

under, consummate, implement, and fully close the Agreement, including the assumption and assignment to the Purchaser of the Assigned Contracts, together with additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale.

**Transfer of the Acquired Assets**

7.      **Transfer of the Acquired Assets Authorized.** Pursuant to Bankruptcy Code sections 105(a), 363(b), 363(f), and 365 the Debtors are authorized and directed to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Sale in accordance with the terms and conditions set forth in the Agreement and this Sale Order, (b) assume and assign any and all Assigned Contracts as of Closing, and (c) take all further actions and execute and deliver the Agreement and other related ancillary transaction documents and any and all additional instruments and documents that may be necessary or appropriate to implement the Agreement and the other related documents and consummate the Sale in accordance with the terms thereof, all without further order of the Court. At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Acquired Assets shall be immediately vested in the Purchaser (or its designee). Such transfer shall constitute a legal, valid, enforceable, and effective transfer of all of the Debtors' right, title, and interest in and to, and possession of, the Acquired Assets.

8.      **Surrender of Acquired Assets by Third Parties.** All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Purchaser or its assignee at the Closing. On the Closing Date, each of the Debtors' creditors are authorized and directed to execute such documents and take such other actions as may be reasonably necessary to release their Interests in the Acquired Assets, if any, as such Interests may have been recorded or may otherwise exist.

69071674.7

All persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to sell and transfer the Acquired Assets to the Purchaser in accordance with the terms of the Agreement and this Sale Order.

9.      **Transfer Free and Clear of Interests.** Upon the Debtors' receipt of the Purchase Price, and other than Permitted Encumbrances and Assumed Liabilities specifically set forth in the Agreement, the transfer of the Acquired Assets to the Purchaser shall be free and clear of all Interests of any kind or nature whatsoever, including, without limitation, (a) successor or successor-in-interest liability, (b) Claims in respect of the Excluded Liabilities, and (c) any and all Contracts not assumed and assigned to the Purchaser pursuant to the terms of the Agreement, with all such Interests to attach to the net proceeds received by the Debtors ultimately attributable to the Acquired Assets against, or in, which such Interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Interests now have against the Acquired Assets, subject to any rights, claims, and defenses that the Debtors or their estates, as applicable, may possess with respect thereto. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Encumbrances against or in the Acquired Assets (other than with respect to Permitted Encumbrances or Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing of the Sale in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Interests which such person or entity has or may assert with respect to all or a portion of the Acquired Assets, then only with regard to the Acquired

25

69071674.7

Assets that are purchased by the Purchaser pursuant to the Agreement and this Sale Order, the Debtors and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets.

10.     **Legal, Valid, and Marketable Transfer with Permanent Injunction.** The transfer of the Acquired Assets to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer of good and marketable title of all of the Debtors' right, title, and interest in and to the Acquired Assets, and vests, or will vest, the Purchaser with all right, title, and interest to the Acquired Assets, free and clear of all Interests except for Permitted Encumbrances and Assumed Liabilities and except as otherwise expressly stated as obligations of the Purchaser under the Agreement. All Persons holding interests or claims of any kind or nature whatsoever against the Debtors or the Acquired Assets, the operation of the Acquired Assets prior to the Closing Date, the Auction or the Acquired Asset Sale are hereby and forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Acquired Assets, any claim, interest or liability existing, accrued, or arising prior to the Closing.

11.     **Recording Offices and Releases of Interests.** On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance, and transfer of the Acquired Assets or a bill of sale transferring good and marketable title of the Acquired Assets to the Purchaser. This Sale Order is and shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing, other than Permitted Encumbrances and Assumed Liabilities, or as otherwise provided in this Sale Order, shall have

26

been unconditionally released, discharged, and terminated, and that the conveyances described herein have been affected. This Sale Order is and shall be binding upon and govern the acts of all persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. A certified copy of this Sale Order may be: (a) filed with the appropriate clerk; (b) recorded with the recorder; and/or (c) filed or recorded with any other governmental agency to act to cancel any Interests against the Acquired Assets, other than the Permitted Encumbrances and Assumed Liabilities.

12. **Cancellation of Third-Party Interests.** Notwithstanding the foregoing, the provisions of this Sale Order authorizing the transfer of the Acquired Assets free and clear of all Interests (except only for Permitted Encumbrances and Assumed Liabilities) shall be self-executing, and it shall not be, or be deemed, necessary for any person or entity to execute or file releases, termination statements, assignments, consents, or other instruments in order for the provisions of this Sale Order to be implemented.

## Assumption and Assignment of Contracts

13.     **Authorization to Assume and Assign.** Upon the Closing, the Debtors are authorized and directed, in accordance with Bankruptcy Code sections 105(a), 363 and 365, to assume and assign each of the Assigned Contracts to the Purchaser free and clear of all Interests as of the Closing Date. The payment of the applicable Cure Amounts (if any) by the Purchaser shall (a) effect a cure or adequate assurance of cure of all defaults existing thereunder as of the date on which the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "**Petition Date**") and (b) compensate for any actual pecuniary loss to such Contract Counterparty resulting from such default. The Purchaser shall then have assumed the Assigned Contracts and, pursuant to Bankruptcy Code section 365(f), the assignment by the Debtors of such Assigned Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts, neither the Debtors, nor the Purchaser shall have any further liabilities to the Contract Counterparties other than the Purchaser's obligations under the Assigned Contracts, that accrue and become due and payable on or after the Closing Date.

14.     **Release of Interests Against the Debtors' Cash and Cash Equivalents as of Closing by Orchids Investment LLC.** Without limitation to the other provisions of this Sale Order, at the Closing Orchids Investment LLC, as Prepetition Secured Lender and DIP Lender (as such terms are defined in the DIP Order), shall execute such documents and take such other actions as may be reasonably necessary to release their Interests in and to the Cash and Cash Equivalents of the Debtors as of the Closing (including to the extent of any Wind-Down Amount funded by Purchaser pursuant to the Agreement) so that such Cash and Cash Equivalents may be used to fund the Wind-Down Payment, repay the DIP Loan, and make such other payments as set forth in Section 6.21 of the Agreement.

28

15. **Assignment Requirements Satisfied.** The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser, in accordance with their respective terms, notwithstanding (a) any provision in any such Assigned Contract (including provisions of the type described in Bankruptcy Code sections 365(b)(2), (e)(1) and (f)(1)) which prohibits, restricts or conditions such assignment or transfer or (b) any default by the Debtors prior to Closing under any such Assigned Contract or any disputes between the Debtors and a Contract Counterparty with respect to any such Assigned Contract arising prior to Closing. In particular, any provisions in any Assigned Contract that restrict, prohibit or condition the assignment of such Assigned Contract or allow the Contract Counterparty to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. Additionally, no sections or provisions of the Assigned Contracts that purport to (a) prohibit, restrict or condition the Debtors' assignment of the Assigned Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor parties to such Assigned Contracts; (b) authorize the termination, cancellation or modification of the Assigned Contracts based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; or (c) declare a breach or default or otherwise give rise to a right of termination as a result of any change in control in respect of the Debtors, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code section 365(f) and/or are otherwise unenforceable under Bankruptcy Code section 365(e). All other requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to the Purchaser of the Assigned Contracts have been

69071674.7

satisfied. Upon the Closing, in accordance with Bankruptcy Code sections 363 and 365, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Assigned Contracts.

16.     **Consent to Assign.** The Contract Counterparties to each Assigned Contract shall be and hereby are deemed to have consented to such assumption and assignment under Bankruptcy Code section 365(c)(1)(B) or this Court has determined that no such consent is required, and the Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the Closing Date without the necessity of obtaining the Contract Counterparty's written consent to the assumption and assignment thereof.

17.     **Section 365(k).** Upon the Closing and (a) the payment of the applicable Cure Amount or (b) in the event of any dispute over the appropriate Cure Amount, the reserve and escrow of the amount necessary to satisfy the Cure Amount asserted by the Contract Counterparty pending resolution of the dispute by the Bankruptcy Court, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts and the Debtors and their estates shall be relieved, pursuant to Bankruptcy Code section 365(k), from any further liability under the Assigned Contracts.

18.     **No Default.** Subject to the terms hereof with respect to the Cure Amounts, all defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing Date have been cured or shall promptly be cured by the Debtors in accordance with the terms hereof such that the Purchaser shall have no liability or obligation with respect to any default or obligation arising or accruing under any Assigned Contract prior to the Closing Date, except to the extent expressly provided in the Agreement, except for the Purchaser's payment of the Cure Amounts. Each party to an Assigned Contract is forever barred,

estopped, and permanently enjoined from asserting against the Purchaser or its property or affiliates, or successors and assigns, any breach or default under any Assigned Contract, any claim of lack of consent relating to the assignment thereof, or any counterclaim, defense, setoff, right of recoupment or any other matter arising prior to the Closing Date for such Assigned Contract or with regard to the assumption and assignment therefore pursuant to the Agreement or this Sale Order. Upon the payment of the applicable Cure Amount, if any, the Assigned Contracts will remain in full force and effect, and no default shall exist under the Assigned Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

19. **Adequate Assurance Provided.** The requirements of Bankruptcy Code sections 365(b)(1) and 365(f)(2) are hereby deemed satisfied with respect to the Assigned Contracts based on the Purchaser's evidence of its financial condition and wherewithal and without any further action by the Purchaser, including but not limited to any other or further deposit. Pursuant to Bankruptcy Code section 365(f), the Purchaser has provided adequate assurance of future performance of the obligations under the Assigned Contracts.

20. **No Fees.** There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assigned Contracts.

21. **Injunction.** Pursuant to Bankruptcy Code sections 105(a), 363, and 365, other than the right to payment of the Cure Amounts, if any, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchaser any assignment fee, default, breach or claim, or pecuniary loss arising under or related to the

31

Assigned Contracts existing as of the Petition Date or any assignment fee or condition to assignment arising by reason of the Closing.

22.     **Contract Objections.** Except for a Contract Counterparty who files, or has filed, a timely objection to the Cure amount by **June 12, 2019, at 4:00 p.m. (prevailing Eastern Time)**, or such later date to which the Debtors agreed to in advance in writing (but in no event later than June 28, 2019), which objection shall be resolved by agreement of the parties or entry of further order of this Court in accordance with the procedures set forth in the Bid Procedures Order (a "**Contract Objection**"), such Contract Counterparty is deemed to have consented to such Cure Amount. Except for a Contract Counterparties who files, or has filed, a timely Contract Objection to the Debtors' proposed assignment of such Assigned Contracts to the Purchaser, which objection shall be resolved in accordance with the procedures set forth in the Bid Procedures Order, such Contract Counterparty is deemed to have consented to the assumption and assignment, and the Purchaser shall be deemed to have demonstrated adequate assurance of future performance with respect to, such Assigned Contracts pursuant to Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B). With respect to any timely-filed Contract Objections, such objection shall be resolved in accordance with the procedures set forth in the Bid Procedures Order. The provisions of this Sale Order shall be effective and binding upon the Contract Counterparties to the extent set forth in, and in accordance with, such procedures. Nothing in this Sale Order, the Sale Motion, or in any notice or any other document is, or shall be, deemed an admission by the Debtors that any Assigned Contract is an executory contract or unexpired lease, or must be assumed and assigned pursuant to the Agreement in order to consummate the Sale.

69071674.7

23.     **No Further Debtor Liability.** Except as provided in the Agreement or in this Sale Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities, and all holders of such Claims are forever barred and estopped from asserting such Claims against the Debtors, their successors or assigns, their property, or the Debtors' estates.

24.     **No Waiver of Rights.** The failure of the Debtors or the Purchaser to enforce, at any time, one or more terms or conditions of any Assigned Contracts shall not be a waiver of any such terms or conditions, or of the Debtors' or the Purchaser's rights to enforce every term and condition of the Assigned Contracts.

<u>**Prohibition of Actions Against the Purchaser**</u>

25.     **No Successor Liability.** Except for the Permitted Encumbrances and Assumed Liabilities set forth in the Agreement, or as otherwise expressly provided for in this Sale Order or the Agreement, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Acquired Assets. Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Agreement, the Purchaser shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transfer reliability, labor law, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, environmental liabilities, and any taxes

33

arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the Closing.

26.     Other than as expressly set forth in the Agreement, no Purchaser Party shall have any responsibility for (a) any liability or other obligation of the Debtors or related to the Acquired Assets or (b) any claims against the Debtors or any of their predecessors or affiliates. Except as expressly provided in the Agreement with respect to the Purchaser, no Purchaser Party shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as defined herein, "**Successor or Transferee Liability**") based, in whole or in part, directly or indirectly, on any theory of successor or vicarious liability of any kind of character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Acquired Assets or the Assumed Liabilities prior to the Closing or in respect of pre-Closing periods or (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation, or other employee benefits which is or has been sponsored, maintained, or contributed to by any Debtor or with respect to which any Debtor has any liability, whether or not contingent, including, without limitation, any "multiemployer plan" (as defined in Section 3(37) of ERISA) or "pension plan" (as defined in Section 3(2) of ERISA) to which any Debtor has at any time contributed, or had any obligation to contribute. Except to the extent expressly included in the Assumed Liabilities

34

with respect to the Purchaser or as otherwise expressly set forth in the Agreement, no Purchaser Party shall have any liability or obligation under any applicable law, including, without limitation, (a) the WARN Act, 29 U.S.C. §§ 2101 *et seq.*, (b) the Comprehensive Environmental Response Compensation and Liability Act, (c) the Age Discrimination and Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of 1973 (as amended), (e) the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, or (f) any foreign, federal, state, or local labor, employment or environmental law, by virtue of the Purchaser's purchase of the Acquired Assets, assumption of the Assumed Liabilities, or hiring of certain employees of the Debtors pursuant to the terms of the Agreement. Without limiting the foregoing, no Purchaser Party shall have any liability or obligation with respect to any environmental liabilities of the Debtors or any environmental liabilities associated with the Acquired Assets except to the extent they are Assumed Liabilities set forth in the Agreement.

27.     Nothing in this Sale Order or the Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order. Nothing in this Sale Order or the Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

28.     **Actions Against the Purchaser Enjoined.** Except with respect to Permitted Encumbrances and Assumed Liabilities set forth in the Agreement, or as otherwise permitted by

the Agreement or this Sale Order, all persons and entities, including, without limitation, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Interests of any kind or nature whatsoever against, or in, all or any portion of the Acquired Assets, arising under, out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, or any of its affiliates, successors, or assigns, or their property or the Acquired Assets, such persons' or entities' Interests in and to the Acquired Assets, including, without limitation, the following actions against the Purchaser or its affiliates, or their successors, assets, or properties: (a) commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or other order; (c) creating, perfecting, or enforcing any Lien or other Claim; (d) asserting any setoff (except to the extent such setoff was exercised prior to the Petition Date) or right of subrogation of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (f) to the maximum extent permitted by law, revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Acquired Assets or conduct any of the business operated with the Acquired Assets.

### Other Provisions

29.    **Licenses**. To the maximum extent permitted by applicable law, and in accordance with the Agreement, the Purchaser (or its designee) shall be authorized, as of the Closing, to

operate under any license, permit, registration, and governmental authorization or approval (collectively, the "**Licenses**") of the Debtors with respect to the Acquired Assets. To the extent the Purchaser (or its designee) cannot operate under any Licenses in accordance with the previous sentence, to the maximum extent permitted by law such Licenses shall be in effect while the Purchaser (or its designee), with assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government approvals for new issuance of Licenses to the Purchaser (or its designee). The Debtors shall, at Purchaser's sole cost, maintain the Licenses in good standing to the fullest extent allowed by applicable law for the Purchaser's benefit until equivalent new Licenses are issued to the Purchaser (or its designee).

30.     **Access to Books and Records.**  Following the Closing of the Sale, the Debtors (or any subsequently appointed bankruptcy estate representative, including, but not limited to, a trustee, a creditor trustee or a plan administrator) shall have, and the Purchaser shall provide, reasonable access to their books and records, to the extent they are included in the Acquired Assets transferred to the Purchaser as part of the Sale as set forth in the Agreement.  Counsel for the Creditors' Committee may also request copies of the Debtors' books and records (both hard copies and electronically stored information) by making such requests to the Debtors. The Debtors will make all reasonable efforts to facilitate such requests with the Purchaser and will review any responsive documents for privilege prior to producing documents to the Creditors' Committee.  Nothing in this paragraph will limit or waive the Creditors' Committee's right to issue one or more subpoenas to the Purchaser or the Debtors for documents in the event that either the Purchaser or the Debtors do not respond to the Creditors' Committee's requests.

31.     **Bulk Sales Law.** No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

32.     **Wind-Down Account.** The provisions of the Agreement relating to the establishment and administration of the Wind-Down Account are approved. The Wind-Down Payment shall be made from the Cash and Cash Equivalents held by the Debtors as of the Closing and/or by the Purchaser to the Debtors at the Closing pursuant to the Agreement. On or as soon as practicable after the Closing, the Wind-Down Payment shall be deposited into the Wind-Down Account and shall be held in trust by the Debtors, free and clear of any and all Encumbrances, for the benefit of Persons entitled to be paid priority claims, administrative expenses and other costs relating to the post-Closing administration and wind-down of the Debtors' estates in accordance with the Wind-Down Budget, subject to the priorities set forth in section 507 of the Bankruptcy Code.  The Wind-Down Budget shall be subject to agreement by the Debtors and the Committee or shall be approved by further Order of this Court.  The bar date(s) for the filing of unsecured priority claims and administrative expenses to be paid from the Wind-Down Account pursuant to the Wind-Down Budget shall be set by further order(s) of this Court.  The allowance and payment of such filed unsecured priority claims and administrative expenses shall be subject to the applicable provisions of the Bankruptcy Court or pursuant to further order(s) of this Court.

33.     **Agreement Approved in Entirety.** The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety.

34.     **Further Assurances**. From time to time, as and when requested, all parties shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may

reasonably deem necessary or desirable to consummate the Sale, including such actions as may be necessary to vest, perfect, or confirm or record or otherwise in the Purchaser its right, title, and interest in and to the Acquired Assets.

35.     **Modifications to Agreement.** The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, in a writing signed by such parties, without further order of this Court, provided any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.  All modifications of the Agreement shall be filed with the Court and served on the Committee and the U.S. Trustee.

36.     **Standing.** The transactions authorized herein shall be of full force and effect, regardless of any Debtors' lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

37.     **Authorization to Effect Order.** The Debtors are authorized to take all actions necessary to effect the relief granted pursuant to this Sale Order in accordance with the Sale Motion.

38.     **Automatic Stay.** The automatic stay pursuant to Bankruptcy Code section 362 is hereby modified, lifted, and annulled with respect to the Debtors and the Purchaser to the extent necessary, without further order of this Court, to (a) allow the Purchaser to deliver any notice provided for in the Agreement and (b) allow the Purchaser to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof. The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Agreement or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified

69071674.7

solely to the extent necessary to implement the preceding sentence, *provided*, *however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

39.     **No Other Bids/Backup Bid.** Except as set forth immediately below, no further bids or offers for the Acquired Assets shall be considered or accepted by the Debtors after the date hereof unless the Sale to the Purchaser is not consummated or otherwise does not occur in accordance with the Agreement or its related documents.   Notwithstanding the foregoing, Orchids Investment LLC, the Stalking Horse Bidder, had the second highest or otherwise best Qualified Bid at the Auction, as determined by the Debtors in consultation with the Creditors' Committee, in the exercise of their business judgment, and shall act as backup bidder (the "**Backup Bidder**"). The Backup Bidder shall be required to keep its final Overbid at the Auction as announced on the record at the Auction (the "**Backup Bid**") open and irrevocable until the earlier of (i) 4:00 p.m. (prevailing Eastern Time) on September 30, 2019 or (ii) the closing of the transaction with the Purchaser. If the Purchaser fails to consummate an approved transaction because of a breach or failure to perform on the part of the Purchaser, the Debtors may designate the Backup Bidder to be the Purchaser upon the filing of a notice to such effect with this Court, in which case Orchids Investment LLC, not Cascades, shall be deemed as the "Purchaser" for all purposes of this Sale Order, and the Debtors shall be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Court. In such case, to the extent consistent with the terms of the Agreement, the original Purchaser's (Cascade) deposit shall be forfeited to the Debtors' estates. The closing date to consummate the transaction with the Backup Bidder shall be no later than the later of twenty five (25) days after the date the Debtors provide notice to the Backup Bidder the Purchaser failed to consummate a sale and the Debtors desire to consummate the transaction with the Backup Bidder and filing of the notice designating

69071674.7

the Backup Bidder as Purchaser with the Court, or five (5) days after necessary regulatory approvals are completed by the Backup Bidder and/or the Debtors. Notwithstanding anything to the contrary set for the above, nothing herein shall prejudice the Committee's rights to challenge the nature, extent, validity and valuation of the Prepetition Secured Lenders' liens and claims against the Debtors' assets during the pendency of the Challenge (as defined in the *Further Interim Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364 and 507, Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Bankruptcy Rules 2002-1, 4001-1, 4001-2 and 6004-1 (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Superpriority Financing, (II) Authorizing the Debtors' Limited Use of Cash Collateral, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 263]), and to the extent of any credit bid, a challenge to the credit bid to the extent such credit bid is in excess of $205,384,646.35, and issues concerning the valuation of any unencumbered assets.

40. **Name of Debtor**. Except as permitted in the Agreement, neither the Debtors nor any of their affiliates shall use, license or permit any third party to use, any name, slogan, logo or trademark which is confusingly or deceptively similar to any of the names, trademarks or service marks included in the Intellectual Property in the Acquired Assets, and each Debtor is directed to change its corporate name to a name which (i) does not use the name "Orchids Paper" or any other name that references or reflects any of the foregoing in any manner whatsoever, (ii) is otherwise substantially dissimilar to its present name, and (iii) is approved in writing by the Purchaser. Within one (1) Business Day of the occurrence of the Closing of the Sale, the Debtors shall file a separate motion consistent with Local Rule 9004-1 (c) seeking to modify the case

caption to reflect the Debtors' new corporate names, and serve the same in accordance with Local Rule 9006-1.

41.    **Order to Govern.** To the extent this Sale Order is inconsistent with any prior order entered or pleading filed in these Chapter 11 Cases, the terms of this Sale Order shall govern. To the extent there are any inconsistencies between the terms of this Sale Order and the Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

42.    **Standing**. The Purchaser has standing to seek to enforce the terms of this Sale Order.

43.    **NMTC Creditors.**    Notwithstanding anything in the Agreement or this Sale Order to the contrary, (a) the transfer, whether by conveyance or assumption and/or assignment of the rights and interests of Orchids Lessor SC, LLC in Acquired Assets and Assigned Contracts relating to the NTMC Arrangements (including, without limitation, the assets and contracts encumbered by a certain Security Agreement dated December 29, 2015, made by Orchids Lessor SC, LLC, as Grantor, for the benefit of RDP 27 LLC and USBCDE Sub-CDE 146, LLC, as Secured Parties, a certain Collateral Assignment of Contracts dated December 29, 2015, made by and between Orchids Lessor SC, LLC, as Assignor, and RDP 27 LLC and USBCDE Sub-CDE 146, LLC, as Assignees, with Consent of Valmet Inc., and a certain Collateral Assignment of Equipment Lease dated December 29, 2015, made by and between Orchids Lessor SC, LLC, as Assignor, and Orchids Paper Products Company, as Lessee, and RDP 27 LLC, and USBCDE Sub-CDE 146, LLC, as Assignees), (b) the transfer, whether by conveyance or assumption and/or assignment of the rights and interests of Orchids Paper Products Company in the Acquired Assets and Assigned Contracts relating to the NMTC Arrangements (including any

42

"put option" arising under a certain Investment Fund Put and Call Agreement dated December 29, 2015, made by and between U.S. Bancorp Community Development Corporation and Orchids Paper Products Company, rights under the equipment leases securing obligations to the NMTC Creditors and any rights respecting the Leverage Loan as described in the NMTC Creditors' Sale Objection) and (c) the assumption and assignment by the Purchaser and/or its designees of the obligations of Debtors held by the NMTC Creditors, shall be conditioned upon the prior written consent of the NMTC Creditors or further order of this Court.  Without limiting the foregoing, absent prior written consent of the NMTC Creditors or further order of this Court, Debtors shall not be entitled to assume any Community Investments Agreement or Community Benefits Agreement as described in the NMTC Cure Objection and the NMTC Creditors reserve all rights with respect to, and shall be entitled to dispute, the "$0 Cure Amount" assigned with respect to any of such agreements or other agreements associated with the NMTC Arrangements.

Cascades and the NMTC Creditors shall file notice with the Court by July 19, 2019 as to whether they have agreed to the terms and conditions upon which the Acquired Assets and Assigned Contracts related to the NMTC Arrangements may be transferred, assumed and assigned with the NMTC Creditors' written consent.  If Cascades and the NMTC Creditors notify the Court that they disagree in part or in whole, Cascades and the NMTC Creditor shall appear at the omnibus hearing to be held on August 13, 2019.

44.     **FAPSA Reservation of Rights**.  The entry of this Sale Order is without prejudice to the objections, arguments and issues set forth in the Objection of Fabrica de Papel San Francisco, S.A. de C.V. ("FAPSA") to the Sale Motion filed on June 25, 2019 [Docket No. 287] and the Objection and Reservation of Rights of FAPSA to Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases filed on June 24, 2019

[Docket No. 277] (collectively, the "FAPSA Objections"), and the defenses, arguments and issues of the Debtors and other parties in interest in response or otherwise relating thereto, all of which are hereby preserved.  The Court shall enter a separate order setting a briefing and hearing schedule to resolve the FAPSA Objection.

45.    **Dixie Reservation of Rights**.  Notwithstanding anything to the contrary in this Sale Order or the Agreement, all objections to the adequate assurance of Purchaser's or any Designated Purchaser or Purchasers' (as defined in Section 12.10 of the Agreement) future performance under that certain Supplier Agreement, dated as of February 20, 2008, as may have been amended, modified or supplemented from time to time, including through the parties' course of dealing (the "**Dixie Agreement**"), made by and between Dixie Pulp & Paper, Inc. ("**Dixie**") and Orchids Paper Products Company, and any other unresolved and unadjudicated issues related to the Dixie Agreement stated on the record at the Sale Hearing or in *Dixie Pulp & Paper, Inc.'s Limited Objection and Reservation of Rights with Respect to (I) Notice to Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases Regarding Cure Amounts and Possible Assignment to the Stalking Horse Bidder or Such Other Successful Bidder at Auction [D.I. 187] and (II) Amended Notice to Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases Regarding Cure Amounts and Possible Assignment to the Stalking Horse Bidder or Such Other Successful Bidder at Auction [D.I. 257]* [D.I. 304], are reserved and preserved pending entry of further order of this Court or as otherwise hereafter agreed in writing by Dixie and Purchaser.

46.    **Amendment to DIP Order**.  Consistent with the agreement announced on the record during the Auction among Orchids Investment LLC, as DIP Lender, the Purchaser, and the Debtors, the DIP Lender and the Debtors are authorized and directed to amend the DIP

Credit Agreement to reduce the regular interest rate applicable to the DIP Loan by two-hundred (200) basis points effective retroactive to the Petition Date.

47.    **Sale Proceeds**. No proceeds from the Sale will be paid to Orchids Investment, LLC, as Prepetition Secured Lender, pending entry of further order of this Court.

48.    **Retention of Jurisdiction**. This Court shall retain exclusive jurisdiction with respect to the terms and provisions of this Sale Order and the Agreement.

49.    **Collective Bargaining Agreements**.  Notwithstanding anything in the Agreement or this Sale Order to the contrary, the two (2) collective bargaining agreements by and between the Debtors and the United Steelworks shall be assumed by Purchaser on the Closing Date and shall not be deleted from the Assigned Contracts listed on Schedule 2.6(a) to the Agreement or from Exhibit B to this Sale Order.

**Dated: July 15th, 2019**
**Wilmington, Delaware**

45

MARY F. WALRATH
**UNITED STATES BANKRUPTCY JUDGE**