**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 19-10729 (MFW) |
| ORCHIDS PAPER PRODUCTS COMPANY, *et al.*,[1] | (Jointly Administered) |
| Debtors. | **Re: Docket No. 293** |
| | **Objection Deadline:** September 9,  2019 at 4:00 p.m. EST |
| | **Requested Hearing Date:** September 10, 2019 at 10:30 a.m. |

**MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 9019**
**APPROVING SETTLEMENT AGREEMENT BY AND AMONG**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,**
**ANKURA TRUST COMPANY, LLC AND ORCHIDS INVESTMENT LLC**

The Official Committee of Unsecured Creditors of Orchids Paper Products Company, *et al.* (the "Committee"), Orchids Investment LLC (the "Lender") and Ankura Trust Company, LLC (the "Agent," and along with the Committee and Lender, collectively, the "Settlement Parties") hereby file this motion (this "9019 Motion") for entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving that certain settlement between the Parties (the "Settlement") which resolves all matters related to the Committee Lien Challenge[2] and the Committee's Objection to the Debtors' Sale Motion (the "Committee Sale Objection").  In support of this 9019 Motion, the Parties respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Orchids Paper Products Company, a Delaware corporation (6944), Orchids Paper Products Company of South Carolina, a Delaware corporation (7198), and Orchids Lessor SC, LLC, a South Carolina limited liability company (7298). The location of the Debtors' mailing address is 201 Summit View Drive, Suite 110, Brentwood, Tennessee 37027.

[2] Terms not otherwise defined herein shall have the meaning afforded to them in the Settlement Agreement attached hereto as Exhibit A.  A fully-executed copy of the Settlement Agreement will be provided to the Court in advance of the requested hearing date.

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this 9019 Motion under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Under Local Rule 9013-1(f), the parties consent to entry of a final order under Article III of the United States Constitution.

2.      Venue of these cases and this 9019 Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are Bankruptcy Rules 2002 and 9019.

**PROCEDURAL BACKGROUND**

3.      On April 1, 2019 (the "Petition Date"), Orchids Paper Products Company and certain of its debtor-affiliates each filed a voluntary petition in this Court commencing a case for relief under Chapter 11 of the Bankruptcy Code (these "Chapter 11 Cases").  Additional information about the Debtors' background is set forth in detail in the *Declaration of Richard S. Infantino, Interim Chief Strategy Officer of Orchids Paper Products Company, in Support of Chapter 11 Petitions and First Day Pleading*, [Docket No. 19] (the "Infantino Declaration").

4.      The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.  No trustee or examiner has been requested in these Chapter 11 Cases.

**FACTUAL BACKGROUND**

5.      On April 1, 2019, the Debtors filed a *Motion For Entry of (I) An Order (A) Approving Bid Procedures In Connection with the Potential Sale of Substantially all of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter into the Option Agreement and*

the Stalking Horse Agreement, (E) Approving Bid Protections, (F) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (G) Granting Related Relief; and (II) An Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases and (C) Granting Related Relief [Docket No. 25] (the "Sale Motion").

6.    On May 20, 2019, the Court entered an *Order (I) Approving Bid Procedures in Connection with the Potential Sale of Substantially All of the Debtors' Assets, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtors to Enter Into the Option Agreement and the Stalking Horse Agreement, (V) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* (the "Bid Procedures Order") [Docket No. 179].

7.    On June 21, 2019, the Committee filed the Complaint challenging the extent, validity, valuation and priority of the Prepetition Lenders' liens and security interest in certain of the Debtors' assets (the "Committee's Lien Challenge").  The Committee's Lien Challenge is Adversary Proceeding Number 19-50264 (MFW) pending before this Court.

8.    On June 26, 2019, the Committee filed its objection to the Debtors' proposed sale [Docket No. 293] (the "Committee's Sale Objection").

9.    On June 27, 2019, the Debtors conducted an auction for the sale of substantially all of their assets (the "Auction").  Counsel and other representatives for the Debtors, the Committee, Orchids Investment, Cascades US Holding Inc. ("Cascades"), and other parties in interest were present at the Auction. After thirty-two rounds and approximately thirteen hours of bidding between Orchids Investment and Cascades, the Debtors declared Cascades' final bid of, *inter alia*, (a) a cash purchase price of $207 million, (b) payment of the DIP loan amounts, and

(c) the assumption of certain assumed liabilities (the "Assumed Liabilities") to be the Successful Bid.

10.     On July 1, 2019, the Court held a hearing on the Sale and on July 15, 2019, the Court entered the *Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Contracts and Leases, and (III) Granting Related Relief* [Docket No. 362] (the "Sale Order"), pursuant to which, among other things, the Court approved the sale of substantially all of the Debtors' assets (the "Sale") to Cascades Holdings US, Inc. ("Cascades").

11.     The Sale is scheduled to close on or about September 4, 2019.

## SUMMARY OF THE SETTLEMENT TERMS

12.     The proposed Settlement Agreement attached hereto as Exhibit "A" sets forth in substantially final form the terms and conditions of the agreement reached among the Settlement Parties.  The following is a summary of certain key terms and conditions of the Settlement Agreement:[3]

(i)     The Lender agrees to set aside $825,000 of the Sale proceeds that are to be paid to the Lender at the Sale closing to be designated solely for the payment of general unsecured claims in these cases (the "Settlement Amount").  The Settlement Amount will be placed in escrow and will be distributed pursuant to the Debtors' plan (or such other distribution means acceptable to the Committee in the event the Debtors are unable to confirm a plan);

---

[3]     The terms and conditions of the Settlement Agreement are summarized for convenience purposes only. Parties in interest are encouraged to review the Settlement Agreement. In the event of any discrepancy between the summary contained herein and the actual terms and conditions of the final Settlement Agreement, the Settlement Agreement shall control.

(ii)     Sale proceeds in the amount of $5 million (the "<u>Holdback</u>") will be held in escrow pending either (a) court-approval of the Settlement Agreement; or (b) the Court's adjudication of the Committee Lien Challenge and Committee's Sale Objection;

(iii)    The Parties agree to entry of a consensual Final DIP Financing Order;

(iv)     The Lender agrees to a deficiency claim in the amount of $13,451,855.69[4] (the "<u>Deficiency Claim</u>") in these Chapter 11 Cases. The Lender will vote its Deficiency Claim in support of the Debtors' Plan if such Plan is acceptable to the Lender in its reasonable discretion but will not participate in any distribution under the Debtors' Plan unless and until all other general unsecured claims of the Debtors are paid in full; and

(v)      The Committee will dismiss the Committee Lien Challenge with prejudice.

<u>**RELIEF REQUESTED AND BASIS FOR RELIEF**</u>

13.    The Settlement Parties have reached an agreement to resolve the Lien Challenge and Committee's Sale Objection and seek to obtain approval of the Settlement from the Court under Bankruptcy Rule 9019.

14.    Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor … and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 & n.2 (3d Cir. 1996). As the Third Circuit has emphasized – "to minimize litigation and expedite the administration of the bankruptcy estate, [c]ompromises are favored in bankruptcy." *Id.* at 393 (quoting 9 Collier on Bankruptcy 9019[1] (15th ed. 1993).

---

[4] The Deficiency Claim remains subject to adjust in the per diem amount of $86,096.01 for each day which passes between August 27, 2019 and the date when the Sale proceeds net of the Holdback are paid to Lender.

15.     The decision whether to approve a settlement or compromise under Bankruptcy Rule 9019 lies within the sound discretion of the bankruptcy court.  In making this decision, the court must make a determination that the compromise is fair and equitable and does not fall below the lowest point in the range of reasonableness.  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968);  *In re Integrated Health Services, Inc.*, 2001 WL 1820426 at *2 (Bankr. D. Del., Jan. 3, 2001) (in considering a settlement, court is not to determine that the settlement is the best that can be achieved, but only that it does not fall below the lowest point in the range of reasonableness).

16.     In evaluating compromises such as the Settlement proposed herein, a bankruptcy court should:

> form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.  Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation.

*TMT Trailer Ferry*, 390 U.S. at 424-25 (1968).  *See In re Martin*, 91 F.3d at 393 (in considering approval of a settlement, the following four factors should be considered:  (1) the probability of success in litigation; (2) the likely difficulties of collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors).

17.     After application of the relevant *Martin* factors, the Parties submit that the Settlement is fair and reasonable and in the best interests of the Settlement Parties, the Debtors' estates, and creditors of the Debtors.  The 9019 Motion should be approved for at least the following reasons:

a.      The Settlement Agreement resolves the various disputes raised in the Committee's Sale Objection and Committee Lien Challenge, without further litigation and expense, and achieves an anticipated distribution for creditors in these Chapter 11 Cases.   If the amounts available under the Settlement Agreement are available for distribution to general unsecured creditors, combined with the Lender's subordination of its asserted Deficiency Claim, unsecured creditors are positioned to receive a recovery on their allowed claims in these Chapter 11 Cases.

b.      The substantial benefits of the proposed settlement should be weighed against the risks involved if the Settlement Agreement is not approved.   Litigation of the valuation and lien perfection issues between the Committee and the Lender will be difficult, complex, fact-intensive, and certainly would entail significant expenditures of time and expense. Professional fees and expenses continue to accrue in these cases and post-Sale closing, it is unclear what resources, if any, would be available for the Committee to continue prosecution of its Lien Challenge.   Any recovery the Committee may ultimately achieve could be reduced by the fees and expenses incurred in achieving that result.   Furthermore, there are no assurances of success on the merits if the Committee were to pursue the Committee's Sale Objection and Committee Lien Challenge.

18.     Accordingly, for all of the above reasons, the Settlement that the Parties have reached is in the best interests of the Debtors' estates and its creditors and therefore should be approved.

19.     In addition, the Parties have previewed the Settlement Agreement with counsel for the Debtors.   Given the Debtors' pending closing on the Sale of substantially all of their assets, which is scheduled to take place on or about September 4, 2019, and the Settlement

Parties' continuing efforts to work with the Debtors to finalize and file a liquidating plan in these Chapter 11 Cases, the Committee seeks to avoid costly and time-consuming litigation with Orchids Investment through the Settlement so the parties can focus on the ultimate goal of obtaining Court approval of a liquidating plan.

## LIMITED NOTICE

20.     Notice of this 9019 Motion to approve the Settlement will be given to (a) the Debtors; (b) the Office of the United States Trustee for the District of Delaware (c) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (d) counsel to Cascades Holdings US, Inc.; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Parties submit that, under the circumstances, no other or further notice of the 9019 Motion is required.

21.     To the extent that parties who are required to receive notice of this 9019 Motion to approve the Settlement under Bankruptcy Rule 2002 were not provided notice of this 9019 Motion, the Parties respectfully request the Court waive the applicable requirement under Bankruptcy Rule 2002(i) given that the Committee is one of the Settlement Parties.  Therefore, in light of the nature of the relief requested herein, the Parties respectfully submit that no other or further notice is required.

## NO FILING OF BRIEF

22.     Because this 9019 Motion presents no novel issues of law, and the statutory and case law authorities relied upon by the Parties are set forth herein, the Parties are not filing a brief in support of this 9019 Motion.  The Committee and the Lender reserve the right to file a brief in reply to any objection to this 9019 Motion or as otherwise deemed necessary by the Parties in accordance with the applicable rules of the Court.

## <u>NO PREVIOUS REQUEST FOR RELIEF</u>

23.    No previous request for the relief sought in this 9019 Motion has been made to this or any other Court.

**WHEREFORE**, the Parties respectfully request entry of an order, substantially in the form attached hereto, approving the Settlement Agreement and granting such other and further relief as is just and proper.

Dated:  August 27, 2019

**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**

*/s/ Marc J. Phillips*
Marc J. Phillips (No. 4445)
1105 North Market Street
Suite 1500
Wilmington, DE 19801
Telephone: (302) 504-7823
E-mail: mphillips@mmwr.com

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq. (*admitted Pro Hac Vice*)
Mary E. Seymour, Esq. (*admitted Pro Hac Vice*)
Bruce Buechler, Esq.  (*admitted Pro Hac Vice*)
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
E-mail: krosen@lowenstein.com
        mseymour@lowenstein.com
        bbuechler@lowenstien.com
        jdipasquale@lowenstein.com

Jennifer Kimble, Esq. (*admitted Pro Hac Vice*)
Gabriel L. Olivera, Esq. (*admitted Pro Hac Vice*)
1251 Avenue of the Americas
New York, New York
Telephone:  (212) 262-6700
Facsimile:  (212) 262-7402
E-mail: jkimble@lowenstein.com
        golivera@lowenestein.com

*Counsel for the Official Committee of Unsecured Creditors*

and

**FOX ROTHSCHILD LLP**

*/s/ Seth A. Niederman*
Seth A. Niederman (No. 4588)
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
Telephone: (302) 654-7444
Email: sniederman@foxrothschild.com

**WINSTON & STRAWN LLP**
Daniel J. McGuire (*admitted Pro Hac Vice*)
35 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 558-5600
Fax: (312) 558-5700
Email: dmcguire@winston.com

***Counsel for Orchids Investment LLC and Ankura Trust Company, LLC***