IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re*: | Chapter 11 |
| ORCHIDS PAPER PRODUCTS CO., et al.,[1] | Case No. 19-10729 (MFW) |
| Debtors. | (Jointly Administered) |
|  | **Objection Deadline: October 9, 2019 at 4:00 p.m.** |
|  | **Hearing Date: October 16, 2019 at 10:30 a.m.** |

**OBJECTION OF THE SECURITIES AND EXCHANGE
COMMISSION TO INTERIM APPROVAL OF THE
DISCLOSURE IN THE COMBINED CHAPTER 11
PLAN OF LIQUIDATION AND DISCLOSURE
STATEMENT OF ORCHIDS PAPER PRODUCTS COMPANY, ET AL.**

The United States Securities and Exchange Commission ("Commission"), a statutory party to these proceedings[2] and the federal agency responsible for regulating and enforcing compliance with the federal securities laws, objects to the debtors' motion for interim approval of the disclosure in the Combined Chapter 11 Plan of Liquidation ("Plan") and Disclosure Statement ("Disclosure Statement") of Orchids Paper Products Company, et al. ("Interim Approval Motion"), filed September 27, 2019.  In the Commission's view, the debtors cannot utilize the expedited procedure for approval of the Disclosure Statement under the Local Delaware Bankruptcy Rules because the Plan contains non-consensual, third-party releases by non-debtors of other non-debtors.

---

[1] Other affiliated debtors are Orchids Paper Products Company of South Carolina and Orchids Lessor SC, LLC.

[2] As a statutory party in corporate reorganization proceedings, the Commission "may raise and may appear and be heard on any issue[.]"  11 U.S.C. § 1109(a).

1

I.        **INTRODUCTION**

On April 1, 2019, Orchids Paper Products Company ("Orchids Paper") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Orchids Paper is a public company whose shares were traded on the NYSE American exchange until April 2019, and are now traded on the OTC Markets under the symbol "TISUQ."

On September 27, 2019, the Debtors filed their combined Plan and Disclosure Statement. They are seeking interim approval of their disclosure on 14-days' notice under Local Bankruptcy Rule 3017-2(c), rather than the normal 28-day notice period provided under Federal Rule Bankruptcy Procedure 3017. However, the shortened notice period is only available "if the plan of liquidation does not seek non-consensual releases/injunctions with respect to claims creditors may hold against non-debtor parties." Local Bankruptcy Rule 3017-2(a)(iii).

The Plan provides for a third-party release (the "Release") by holders of claims and interests. Under the Plan, the Class 5 shareholders are receiving no distribution and they are deemed to reject the Plan and are not entitled to vote. The parties who are to be released, including the Debtors' officers and directors, are not providing any consideration for the Release. The Debtors nonetheless seek to bind the shareholders to the Release unless they affirmatively opt out. In the SEC's view, requiring Class 5 shareholders to affirmatively opt out of the Release renders the Release non-consensual and therefore makes Local Bankruptcy Rule 3017-2(c) unavailable to the Debtors.

## II. ARGUMENT

A. <u>The Release by Class 5 Shareholders is Not Consensual.</u>

As set forth above, the Plan would release the liability of, and permanently enjoin actions against, non-debtor third parties by the Class 5 shareholders in contravention of Sections 524(e) and 1123(a)(4) of 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"). As a general matter, non-debtor third-party releases contravene Section 524(e) of the Bankruptcy Code, which provides that only debts of the debtor are affected by Chapter 11 discharge provisions. Such releases have special significance for public investors, such as Orchids Paper's Class 5 shareholders, because they may enable non-debtors to benefit from a debtor's bankruptcy by obtaining their own releases with respect to past misconduct, including violations of the federal securities laws or breaches of fiduciary duty under state law.

While such releases may be allowed if parties expressly consent to them in exchange for consideration from each released party, those circumstances are not present here. The Commission has similar concerns regarding an exculpation clause in the Plan that provides that the exculpated parties shall have no liability for any acts or omissions taken in connection with the restructuring, including certain prepetition conduct, but excluding actual fraud, gross negligence, or willful misconduct.

Section 524(e) of the Bankruptcy Code addresses the scope of a bankruptcy discharge and states, in relevant part, that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Bankruptcy Code contemplates that a discharge only affects the debts of those submitting to its burdens. *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203, 211 (3d Cir. 2000). Nonetheless, courts in this

3

District have held that third-party releases of non-debtors may be allowed if they are consensual. *See In re Washington Mutual, Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011) (MFW); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (MFW); *see also In re Arrowmill Dev. Corp.*, 211 B.R. 497, 506-07 (Bankr. D.N.J. 1997) (court held that debtors must give creditors and interest holders an opportunity to individually consent to the release, apart from voting on the plan).

In the Commission's view, releases should be considered to be consensual only if the affected parties provide affirmative consent. Here, by contrast, the class 5 shareholders must affirmatively opt out of the Release. Bankruptcy courts in this Circuit have generally held that an opt-out mechanism is not sufficient to support a third-party release, particularly with respect to those who do not return a ballot. *Washington Mutual*, 442 B.R. at 355 ("[T]he Court concludes that the opt out mechanism is not sufficient to support the third party releases anyway, particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place). Failing to return a ballot is not a sufficient manifestation of consent to a third party release"); *Zenith Electronics*, 241 B.R. at 111 (releases of third-party claims cannot be accomplished without the affirmative agreement of the affected creditor); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (court found non-debtor releases consensual and binding only on creditors and interest holders voting to accept the plan); *cf. In re Spansion, Inc.*, 426 B.R. 114, 144-45 (Bankr. D. Del. 2010) (court found releases consensual only with respect to parties voting to accept the Plan, and unimpaired creditors deemed to have accepted the Plan). Thus, simply abstaining from voting or voting to reject a plan but failing to opt out of the releases does not constitute "consent."

Here, the Plan deems the consent of the Class 5 shareholders to the Release to be established by silence or failure to opt out. This is inconsistent with basic contract principles. *In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third party release.") *citing Washington Mutual*, 442 B.R. at 352. The Restatement of Contracts makes clear that silence or failure to act cannot be deemed consent under the facts of this case.

Under the Restatement, silence can be deemed to be acceptance only:

(1)

(a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.
(b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.
(c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.
(2) An offeree who does any act inconsistent with the offeror's ownership of offered property is bound in accordance with the offered terms unless they are manifestly unreasonable. But if the act is wrongful as against the offeror it is an acceptance only if ratified by him.

Restatement (Second) of Contracts, § 69; *see also Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 433 n.3 (D. Del. 2012) ("Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting.").

None of the situations enumerated in the Restatement apply here. The Debtors cannot rely on the silence of the Class 5 shareholders, who are not even entitled to vote on the Plan, as a manifestation of their acceptance of the Release. Accordingly, the

Debtors cannot utilize Local Bankruptcy Rule 3017-2(c) to obtain interim approval of their disclosure.

The Commission understands that the Debtors have advised the Office of the United States Trustee that they believe that the decision in *In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) controls here and stands for the proposition that a class that is deemed to have rejected the plan may nonetheless be required to affirmatively opt out of a third-party release-*i.e.*, any third-party release is consensual if a party is given the opportunity to opt out. Even if *Indianapolis Downs* did control—and we take the position that it does not—it is inapposite. The *Indianapolis Downs* Court made clear that *only creditors entitled to vote on the plan* were required to opt out of the third-party release if they rejected the plan or abstained from voting. The classes *deemed to have rejected* the plan were not subject to the third-party release at all. *Indianapolis Downs*, 486 B.R. at 304-05. That is simply not the case here where shareholders who are deemed to reject and are not even receiving a ballot are required to affirmatively opt out.

Moreover, *Indianapolis Downs* did not involve a publicly held company whose equity securities are held, at least in part, in street name. Here, there are many reasons that a Class 5 equity holder may not return an opt-out form. First, as many of the securities are held in street name, it is quite possible that the equity holder did not receive a beneficial holder ballot from its broker. Or the equity holder may have received inadequate notice of the opt-out form from the broker. Under these circumstances, the Court should not assume that each Class 5 member who does not submit an opt-out form knowingly opted to consensually give up rights against third parties.

In addition, in the Commission's view, the exculpation clause in the Plan constitutes an impermissible non-debtor release and discharge since it limits the liability of various entities for conduct that occurred prior to the Chapter 11 case, and hence falls squarely within the scope of Section 524(e).  Although willful misconduct and gross negligence are carved out, the exculpation provision could still potentially release various non-scienter-based claims.  *See Washington Mutual*, 442 B.R. at 350, *citing In re PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000)* (exculpations are limited to actions by estate fiduciaries in the bankruptcy case).

B. <u>Reservation of Rights</u>

The Commission reserves the right to argue at the confirmation stage that the Release and exculpation provisions of the Plan are not consensual and should not be approved.  In addition, the Commission notes that there is no carve out from the Release for the Commission or other governmental units exercising their police and regulatory powers, and the Commission reserves its right to object to confirmation on that ground, as well.  Finally, although the Debtors are liquidating and not entitled to a discharge under Bankruptcy Code Section 1141(d)(3), the Plan nonetheless implements a permanent injunction against all persons and entities from "asserting against the Debtors. . . any further Claims or Equity Interests based on any act, or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date…." Plan at 62.  In the Commission's view, the permanent injunction provision is an improper end run around Section 1141(d)(3) of the Bankruptcy Code and the Commission similarly reserves the right to object to this provision at confirmation.

**CONCLUSION**

For all of the foregoing reasons, the Commission requests that the Court deny the Interim Approval Motion, and grant the Commission such other relief as is just and proper.

Dated: October 9, 2019
      New York, NY

                                       UNITED STATES SECURITIES AND
                                       EXCHANGE COMMISSION

                                       By: /s/ Neal Jacobson
                                           Neal Jacobson
                                       Brookfield Place
                                       200 Vesey St., Suite 400
                                       New York, NY 10281
                                       (212) 336-0095
                                       Jacobsonn@sec.gov

Of Counsel: Alistaire Bambach
                Morgan Bradylyons