**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ORCHIDS PAPER PRODUCTS COMPANY, *et al.*,<br><br>        Debtors. | Chapter 11<br>Case No. 19-10729 (MFW)<br>(Joint Administered)<br><br>**Hearing: October 16, 2019, at 10:30 a.m.**<br>**Objections Due: October 9, 2019 at 4 p.m.**<br><br> Dkt. No. 539 |

**OBJECTION OF THE UNITED STATES TRUSTEE TO MOTION OF DEBTORS FOR AN ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURES IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ON AN INTERIM BASIS, (II) SCHEDULING THE CONFIRMATION HEARING AND DEADLINE FOR FILING OBJECTIONS, (III) ESTABLISHING PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT, (IV) APPROVING THE FORM OF BALLOT AND SOLICITATION PACKAGE, AND (V) APPROVING THE NOTICE PROVISIONS**

Andrew R. Vara, the Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through his undersigned attorney, hereby submits this Objection to the Motion of Debtors for an Order (i) Approving the Adequacy of the Disclosures in the Combined Plan and Disclosure Statement on an Interim Basis, (ii) Scheduling the Confirmation Hearing and Deadline for Filing Objections, (iii) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Combined Plan and Disclosure Statement, (iv) Approving the Form of Ballot and Solicitation Package, and (v) Approving the Notice Provisions for an Order  (Dkt. 539) (the "Motion"), and in support of that Objection states as follows:

# I. PRELIMINARY STATEMENT

1.      The Debtors have proposed a plan whereby the shareholders of the lead Debtor, which is a public company, will receive no distribution under the plan and are therefore deemed to reject the plan.  Despite such treatment, the Debtors seek Court approval of a process whereby the Debtors will serve the shareholders with an opt-out form, which must be returned by the voting deadline for such shareholders to avoid being deemed to give third party releases.

2.      The Debtors' Motion is made pursuant to Local Rule 3017-2, which allows abbreviated procedures for liquidating plans in chapter 11 under certain circumstances.  That rule explicitly excludes plans with non-consensual releases in favor of non-debtor parties. *See* L.R. 3017-2 (a)(iii).

3.      This Court, in *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011),  ruled that "any third party release is effective only with respect to those who *affirmatively consent* to it by voting in favor of the Plan and not opting out of the third party releases." *Id.* at 355 (emphasis added).  The Court clarified that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (*or are not entitled to vote in the first place*). Failing to return a ballot is not a sufficient manifestation of consent to a third party release." *Id.* (emphasis added), citing *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999).

4.      Failure to return an opt-out form should be no different.  Affirmative consent is especially important here, because the releases being sought are from public shareholders, most of whom likely hold their stock in street name. The Debtors will not be serving such shareholders directly with the opt-out form.  Rather, the Debtors will serve the form on the

2

brokers, and expect the brokers to pass on those forms to the beneficial owners of the stock. Yet, the Debtors have no control over the brokers, and therefore have no way of knowing whether beneficial stockholders actually received the opt-out form.

5.      The Debtors have the ability at this stage of the proceedings to change the opt-out form into an opt-in form, thereby ensuring that only shareholders who actually received such form, and truly consent to give third party releases, will be deemed to provide the same. This is especially important because the shareholders are receiving no distribution under the plan, and therefore no consideration for giving any release.

6.      The sole recipients of the third party releases are estate fiduciaries, namely the Debtors' professionals who have been employed since the Petition Date, the Debtors' officers and directors serving after the Petition Date, and the Committee, its members and its professionals. These parties will be receiving exculpations under the Combined Plan and Disclosure Statement, and should not receive releases that are beyond the scope of such exculpations. *See Washington Mutual*, 442 B.R. at 354, and other cases discussed below.

7.      Ordinarily, the propriety of third party releases is a confirmation issues. However, by the Motion, the Debtors seeks Court approval now of the opt-out procedure for shareholders. This objection is therefore timely.

8.      The U.S. Trustee also objects to deeming those holders of claims in Class 4 who do not return a ballot as consenting to give third party releases. However, that issue, along with others related to the release and exculpation provisions, is a confirmation issue that can be addressed at the confirmation hearing. The U.S. Trustee reserves the right to raise all

confirmation issues by the confirmation objection deadline.

9.      For these reasons, as set forth in greater detail below, that portion of the Motion which seeks the Court's approval of the opt-out form to be served on the Debtors' shareholders should be denied.[1]

## II. JURISDICTION

10.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this objection.

11.      Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District.  Such oversight is part of the U. S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Systems, Inc.* (*In re Columbia Gas Systems, Inc.*)*,* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the "U.S. Trustee as a "watchdog").

12.      Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment such plans and

---

[1]    The U.S. Trustee's counsel believes she has reached an agreement with the Debtors' counsel as to modifications to be made to the form of proposed order on the Motion, the ballot and related notices, other than those addressed in this Objection.  The U.S. Trustee reserves the right to supplement this Objection, or to assert additional objections at the hearing on the Motion, if such modifications are not made.

disclosure statements.

13.     Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this objection.

### III. FACTS

14.     Debtor Orchids Paper Products Company ("Orchids") is a public company.

15.     On April 1, 2019 (the "Petition Date"), the Debtors commenced these Chapter 11 cases.

16.     On April 15, 2019, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

17.     On September 27, 2019, the Debtors filed their Combined Plan and Disclosure Statement, pursuant to the procedures set forth in Local Rule 3017-2. *See* Dkt. No. 538. On that same date, the Debtors filed the Motion. *See* Dkt. No. 539.

18.     The Combined Plan and Disclosure Statement provides for one voting class, Class Four, which is comprised of creditors holding general unsecured claims. The Combined Plan and Disclosure Statement also includes certain classes that are unimpaired, and are therefore presumed to accept the Combined Plan and Disclosure Statement.

19.     There is only one class under the Combined Plan and Disclosure Statement that is deemed to reject, because the members of that class are receiving no distribution. That is Class 5, consisting of the holders of equity interests in the public Debtor, Orchids.

20.     The Motion attaches various forms of notices, including, as Exhibit 4, a Notice of Non-Voting Status (Deemed to Reject) to be served on Orchids' shareholders. This notice attaches a form which indicates that, if the shareholder wishes to opt-out of giving the third party releases under the Combined Plan and Disclosure Statement, the shareholder must sign and

return the form indicating that they opt out of giving such releases.  The form of order proposed

by the Debtors on the Motion approves this opt-out form, and sets the voting deadline as the date

by which such forms must be received by the Debtors' claims agent to be effective.  *See* Motion,

Ex. A, ¶¶ 3 and 17.

21.    Set forth below are the provisions of the Combined Plan and Disclosure Statement

that are relevant to the opt-out procedures which the Debtors seek the Court to approve at this

time.

22.    The **third party release** is set forth in § XI.D of the Combined Plan and

Disclosure Statement, and provides as follows:

> Effective as of the Effective Date, each of the **Releasing Parties** conclusively,
> absolutely, unconditionally, irrevocably, and forever releases (and each Entity so
> released shall be deemed released by the Releasing Parties) each and all of the
> **Released Parties** and their respective property from any and all claims, interests,
> obligations, rights, suits, damages, causes of action, remedies, and liabilities
> whatsoever (other than for illegal conduct, gross negligence, bad faith, or fraud),
> including with respect to any rights or Claims that could have been asserted
> against any or all of the Released Parties with respect to any derivative claims,
> asserted or assertable on behalf of the Debtors or the Estates, as applicable,
> whether known or unknown, foreseen or unforeseen, existing or hereinafter
> arising, in law, equity, or otherwise, that such Entity would have been legally
> entitled to assert (whether individually or collectively), based on or relating to, or
> in any manner arising from, in whole or in part, the Debtors, the Chapter 11
> Cases, the purchase, sale, transfer, or rescission of the purchase, sale, or transfer
> of any debt, security, asset, right, or interest of the Debtors, the subject matter of,
> or the transactions or events giving rise to, any Claim or Interest that is treated in
> the Combined Plan and Disclosure Statement, the business or contractual
> arrangements between the Debtors and any Released Party, the restructuring or
> any alleged restructuring or reorganization of Claims and Interests prior to or in
> the Chapter 11 Cases, the negotiation, formulation, or preparation of the
> Combined Plan and Disclosure Statement and any other agreements or documents
> effectuating the Combined Plan and Disclosure Statement, or related agreements,
> instruments, or other documents (including, for the avoidance of doubt, providing
> any legal opinion requested by any Entity regarding any transaction, contract,
> instrument, document, or other agreement contemplated by the Combined Plan
> and Disclosure Statement or the reliance by any Released Party on the Combined
> Plan and Disclosure Statement or the Confirmation Order in lieu of such legal

opinion), and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to the Debtors or the Estates.

Combined Plan and Disclosure Statement at § XI.D (emphasis added).

23. The parties providing the third party releases are termed the "**Releasing Parties,**"

and are defined as follows:

"**Releasing Parties**" means, individually and collectively, (a) each Holder of a Claim or Equity Interest that (i) votes to accept the Combined Plan and Disclosure Statement, (ii) is conclusively deemed to have accepted the Combined Plan and Disclosure Statement, (iii) abstains from voting on the Combined Plan and Disclosure Statement, (iv) votes to reject the Combined Plan and Disclosure Statement and does not opt out of the releases contained in the Combined Plan and Disclosure Statement, or (v) is conclusively deemed to have rejected the Combined Plan and Disclosure Statement and does not opt out of the releases contained in the Combined Plan and Disclosure Statement; and (b) as to each of the foregoing Entities in the foregoing clause (a), each such Entities' and their affiliates' current and former officers, directors, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and all other professionals and retained Professionals (in each case as to the foregoing Entities and their Affiliates in clause (a), solely in their capacity as such).

*Id.*

24. The beneficiaries of the third party releases are the "**Released Parties,**" who are

defined as follows:

"**Released Parties**" means, individually and collectively, in each case solely in their capacity as such, each and all of: (a) the Debtors' Professionals employed on or after the Petition Date; (b) the Debtors' CSO; (c) the Debtors' Board and officers who are serving in such capacity on or after the Petition Date, except with respect to D&O Claims; and (d) the Committee and members of the Committee in their capacity as members of the Committee. With respect to each of the foregoing identified in subsection (d), each and all of their respective direct and indirect current and former affiliates, subsidiaries, partners (including general partners and limited partners), investors, managing members, members, officers, directors, principals, employees, managers, controlling persons, agents, attorneys, investment bankers, Professionals, advisors, and representatives, each in their capacity as such.

*Id.*

25.    The Combined Plan and Disclosure Statement also includes an exculpation clause, which provides an exculpation to the "Exculpated Parties."  The definition of "**Exculpated Parties**," which is essentially the same as the definition of "Released Parties," is as follows:

> "**Exculpated Parties**" means, individually and collectively, in each case solely in their capacity as such, each and all of: (a) the Debtors' current Professionals as of the Petition Date; (b) the Debtors' CSO; (c) the Debtor's Board and officers who are serving in such capacity on or after the Petition Date; and (d) the Committee and current and former members of the Committee in their capacity as members of the Committee. With respect to each of the foregoing identified in subsection (d), each and all of their respective direct and indirect current and former affiliates, subsidiaries, partners (including general partners and limited partners), investors, managing members, members, officers, directors, principals, employees, managers, controlling persons, agents, attorneys, investment bankers, Professionals, advisors, and representatives, each in their capacity as such.

*Id.*

## IV. LAW AND ANALYSIS

### The Proposed Opt-Out Procedure is Impermissible under Applicable Law

26.    The procedure set forth in the Motion whereby Orchids' public shareholders shall be deemed to consent to give third party releases for no consideration, under a plan they are deemed to reject, unless they return an opt-out form, is contrary to the standards set forth by this Court in *Washington Mutual*, 442 B.R. 314 (Bankr. D. Del. 2011), and other cases in this District, as well as by the Court of Appeals for the Third Circuit in *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3d Cir. 2000).

**A.  Consent to Third Party Releases Requires an Affirmative Act**

27.    As set forth in the Fact section above, the third party releases in the Combined

Plan and Disclosure Statement will be given not only by those creditors who voted to accept the

plan, and those unimpaired classes who are deemed to accept the plan, but also by the public

equity holders of Orchids, who are to receive no distribution under the plan, have no right to vote

on the Combined Plan and Disclosure Statement, and are deemed to reject the same.  The only

way that a shareholder can avoid being deemed to give the third party releases is to return a form

opting out of such releases by the voting deadline.

28.    Some Courts in this District have determined that third-party releases of non-

debtor should be allowed only to the extent the releasing parties have given affirmative consent.

*See In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011).  In *Washington Mutual*

the Court held that "any third party release is effective only with respect to those who

*affirmatively consent* to it by voting in favor of the Plan and not opting out of the third party

releases."  *Id.* at 355 (emphasis added).  The Court clarified that merely having an opt out

mechanism is not enough, holding that an "opt out mechanism is not sufficient to support the

third party releases . . . particularly with respect to parties who do not return a ballot (*or are not*

*entitled to vote in the first place*)."  *Id.* (emphasis added).  *Failing to return a ballot is not a*

*sufficient manifestation of consent to a third party release.*"  *Id.* (emphasis added), citing *In re*

*Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999).

29.    Other decisions from Court in this District are in accord with *Washington Mutual*.

*See In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004)(holding that the

"Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of

third parties," and that such release must be based on consent of the releasing party); *In re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003)(approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan);  *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999)(release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan).

30.    While the Court in *In re Indianapolis Downs, LLC*, 486 B. R. 286 (Bankr. D. Del. 2013) reached a different conclusion concerning the need for affirmative consent to third party releases, the plan in that case did not propose, as the Orchids plan does, that third party releases be given by parties who are deemed to reject the plan.  *See id.* at 304-05.  The Court in *In re Spansion, Inc.*, 426 B.R. 114 (Bankr. D. Del 2010), also reached a different conclusion with respect to affirmative consent, but only as to releases given by unimpaired classes, who were "being paid in full."  *Id.* at 144.  In fact, as discussed in more detail below, in *Spansion,* the Court determined that non-consensual releases being deemed to be given by parties who were not receiving any distribution under the plan did not pass muster under applicable law.  *See id*. at 145.

31.    Under the holding of *Washington Mutual*, and the other cases cited above, the Debtor' proposed opt-out procedure for Orchids' public shareholders must be rejected.  The shareholders "are not entitled to vote in the first place" (*Washington Mutual, Inc.*, 442 B.R. at 355), because they are deemed to reject the plan.   And if "[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release" (*id.*), then failing to return an opt-out form cannot be a manifestation of such consent.  Thus, the third party releases the Debtors seek

to impose on the equity holders are not consensual.  As such, the Debtors' Combined Plan and Disclosure Statement is not eligible for the abbreviated procedures allowed under Local Rule 3017-2, as that rule expressly excludes plans that have non-consensual releases in favor of non-debtor parties.[2]

32.    There is no prejudice to the Debtors or to the Released Parties in requiring an affirmative expression of consent from shareholders before such shareholders are deemed to give releases.  Such procedure helps to ensure that there is true consent, rather than consent assumed by silence, which could be caused by factors such as a package being wrongly addressed or misdelivered, or other mail failures or delays.  The risk of mail errors should be borne by the estate fiduciaries who are the beneficiaries of the releases, not by the Debtors' public shareholders.  That is especially true here, where much of the stock of Orchids is likely held in street name, and therefore the Debtors will not be able to mail opt-out forms directly to most of the beneficial stockholders.  Rather, the Debtors will be serving the opt-out forms on brokers, and expect such brokers to pass such forms along to the beneficial stockholders.  Yet the Debtors have no control over the brokers, and therefore the Debtors, and the Court, will have no way of knowing whether any particular beneficial stockholder was actually provided notice of their right to opt-out of the release.

---

[2]    Local Rule 3017-2 provides as follows: "This Local Rule shall be applicable to all case arising under chapter 11 of the Code where the following requirements are met: . . . (iii) the plan of liquidation does not seek non-consensual releases/injunctions with respect to claims creditors may hold against non-debtor parties." L.R. 3017-2 (a)(iii).  While the rule addresses the release of claims by creditors, there is nothing to indicate it would not apply equally to interests held by shareholders.

**B.  Estate Fiduciaries Who Receive Exculpations Are Not Also Entitled to Releases**

33.    The sole parties who will benefit from the releases to be given by Orchids' public shareholders are estate fiduciaries who will receive exculpations from all holders of claims and interest.  The parties to be released consist of the Debtors' professionals who have been employed since the Petition Date, the Debtors' officers and directors serving after the Petition Date, and the Committee, its members and its professionals.   These same parties are entitled to exculpations under section X.B of the Combined Plan and Disclosure Statement.

34.    This Court, as well as the Court of Appeals for the Third Circuit, has rejected estate fiduciaries' attempts to get releases in addition to exculpations, especially where there is an issue concerning consent.  In *Continental Airlines*, 203 F.3d 203 (3d Cir. 2000), the Court of Appeals held that the Debtors' directors and officers were not entitled to non-consensual third-party releases.  The Court stated that, "we have found no evidence that the non-debtor D & Os provided a critical financial contribution[3] to the Continental Debtors' plan that was necessary to make the plan feasible in exchange for receiving a release of liability." 203 F.3d at 215.

35.    Similarly, in *Washington Mutual*, this Court held that, "there is no basis for granting third party releases of the Debtors' officers and directors, . . . .[as] [t]he only

---

[3]    Because the Third Circuit in *Continental* determined that the non-consensual third party releases at issue there would not be acceptable under circumstances, the Court stated that it "need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for *fair consideration*." *Id.* at 214, n. 11 (emphasis added).[3] However, the Court did describe the "hallmarks of permissible non-consensual releases" to be "fairness, necessity to the reorganization, and special factual findings to support these conclusions." *Id.* at 214.

'contribution' made by them was in the negotiation of the Global Settlement and the Plan,

[which] activities are nothing more than what is required of directors and officers of debtors in

possession (for which they have received compensation *and will be exculpated*); they are

insufficient to warrant such broad releases of any claims third parties may have against them. . . .

."). 442 B.R. at 354 (emphasis added). The Court also disallowed the third party release of the

creditors' committee and its members on the same basis, indicating that, rather than getting a

release, the committee and its members could receive an exculpation, as long as there was an

exception for willful misconduct or gross negligence. *Id.* at 348.

36. *Spansion,* 426 B.R. 114 (Bankr. D. Del 2010), also involved facts similar to the

present case. There, an ad hoc committee of convertible noteholders, the U.S. Trustee and other

parties objected to third party releases to be given to each entity holding a claim or interest in the

cases, in favor of the Debtors' current directors, officers, employees, professionals, and others.

*See id.* at 143 and 142. The debtors in *Spansion* argued that the third party releases were critical

to the success of the reorganized debtors, to prevent management from being disturbed from

running the debtors' operations. The debtors also asserted that all the parties to be released

provided contributions to the debtors' plan by working long hours without additional pay. The

debtors further argued that certain classes, including unsecured creditors, were receiving

significant value under the plan. *Id.* at 145.

37. In *Spansion,* this Court rejected the debtors' arguments, finding that the

contributions to the plan cited by the debtors did not "rise to the level of the critical financial

contributions contemplated in *Continental* and *Genesis* that is needed to obtain approval of non-

consensual releases." *Id.* (*citing, inter alia, In re Genesis Health Ventures, Inc.*, 266 B.R. 581

13

(Bankr. D. Del. 2001)).   The Court also remarked that the objecting parties **were not receiving**

**any distribution under the plan**, and for these reasons, "the proposed nonconsensual Third Party

Release does not pass muster under *Continental*."  *Id.* (emphasis added).  The same is true here.[4]

38.     The Court in *In re Genesis Health Ventures, Inc.*, 266 B.R. 581 (Bankr. D. Del.

2001) also addressed the release of the Debtors' officers, directors, employees and professionals.

Although the releases addressed by the Court's decision in that case were being given by the

debtors, the Court's ruling remains instructive:

> [T]he release of the debtors' pre-petition claims against the officers,
> directors, employees and professionals of the debtors is beyond the *post-
> petition focus* of the *PWS Holding Corporation* [228 F.3d 224 (3d Cir.
> 2000)] release clause. . . .  As in *Zenith*, the officers and directors of the
> debtors no doubt made meaningful contribution to the reorganization by
> designing and implementing the operational restructuring of the
> companies, and negotiating the financial restructuring with parties in
> interest. However, the officers, directors and employees have been
> otherwise compensated for their contributions, and the management
> functions they performed do not constitute contributions of "assets" to the
> reorganization.

*Genesis Health,* 266 B.R. at 606–07 (emphasis added).

---

[4]    The Debtors may argue there is a remote possibility of the Orchid shareholders receiving some
distribution under the plan.  However, this would occur only if all unsecured claims, including the
deficiency claim of Orchids Investment, are paid in full.  *See* Combined Plan and Disclosure
Statement, § IV.B.5.  The Combined Plan and Disclosure Statement estimates the amount of such
claims to be over $37 million.  *See id.* at IV.D.  The liquidation analysis projects a recovery under the
plan to the general unsecured creditors of only 2.74 %.  *See id.*, Ex. A.  Therefore, any chance of
recovery for the shareholders would appear to be extremely remote.  This is acknowledged in section
VI.B.5 of the Combined Plan and Disclosure Statement, which states that, "Debtors estimate that
Holders of Claims [sic] in Class 5 will receive no distribution.  Therefore the Holders of Equity
Interest are deemed to reject the Combined Plan and Disclosure Statement." *See id.*, VI.B.5.

39.     For the same reasons as those recognized by this Court and the Court of Appeals for the Third Circuit, the estate fiduciaries in Orchids are not entitled to releases in addition to exculpations.  This is especially true given the lack of any consideration from the fiduciaries for such releases, and the fact that the Orchid shareholders will receive no distribution under the plan.

## V. RESERVATION OF RIGHTS

40.     The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.  The U.S. Trustee further reserves all objection to final approval of the disclosures in the Combined Plan and Disclosure Statement, and all confirmation objections, including but not limited to those related to the release, exculpation and injunction provisions of the Combined Plan and Disclosure Statement.

WHEREFORE, the U.S. Trustee respectfully requests that this Court issue an order denying the Motion to the extent it seeks approval of an opt-out procedures for the shareholders of Orchids, and/or granting such other relief as this Court deems appropriate, fair and just.

Dated: October 9, 2019
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**
**Region 3**

By: */s/ Juliet Sarkessian*
Juliet Sarkessian, Esquire
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)
Juliet.M.Sarkessian@usdoj.gov