## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ORCHIDS PAPER PRODUCTS COMPANY, *et al.*,[1] | Case No. 19-10729 (MFW) |
| | (Jointly Administered) |
| Debtors. | **Re: Docket Nos. 538 & 539** |
| | **Objection Deadline: October 11, 2019 at 12:00 p.m. (extended for Committee by consent of the Debtors) Hearing Date: October 16, 2019 at 10:30 a.m.** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR AN ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURES IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ON AN INTERIM BASIS, (II) SCHEDULING THE CONFIRMATION HEARING AND DEADLINE FOR FILING OBJECTIONS, (III) ESTABLISHING PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT, (IV) APPROVING THE FORM OF BALLOT AND SOLICITATION PACKAGE, AND (V) APPROVING THE NOTICE PROVISIONS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the Chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by its undersigned counsel, submits this objection (the "Objection") to the Debtors' *Motion* (the "Plan Procedures Motion") *for an Order (I) Approving the Adequacy of the Disclosures in the Combined Plan and Disclosure Statement on an Interim Basis, (II) Scheduling the Confirmation Hearing and Deadline for Filing Objections, (III) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Combined Plan and Disclosure*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Orchids Paper Products Company, a Delaware corporation (6944), Orchids Paper Products Company of South Carolina, a Delaware corporation (7198), and Orchids Lessor SC, LLC, a South Carolina limited liability company (7298). The location of the Debtors' mailing address is 201 Summit View Drive, Suite 110, Brentwood, Tennessee 37027.

*Statement, (IV) Approving the Form of Ballot* ("Ballots") *and Solicitation Package* (the "Solicitation Package")*, and (V) Approving the Notice Provisions* [Docket No. 385], and states:

## PRELIMINARY STATEMENT

1.     The Debtors' Combined Plan and Disclosure Statement should not be conditionally approved, because it provides for inequitable Solicitation Procedures,[2] and is patently unconfirmable given its non-consensual Third-Party Releases, Exculpation of non-Estate fiduciaries, and unwarranted Plan Injunction.

2.     Prior to the Debtors' filing of their Combined Plan and Disclosure Statement, the Committee and the Debtors worked to resolve issues related to the Debtors' proposed Combined Disclosure Statement and Plan.  The Committee provided substantial comments to the Debtors' proposed Combined Plan and Disclosure Statement, many of which were incorporated by the Debtors.  While the parties were able to make some progress on resolving Committee's initial issues with the Debtors' Combined Plan and Disclosure Statement, a number of deficiencies remain.

3.     First and foremost, clear and conspicuous language must be added to the Combined Plan and Disclosure Statement informing creditors that the Committee: (i) does not support the Plan; (ii) does not believe the proposed Plan is fair or confirmable; and (iii) recommends that creditors vote against the Combined Plan and Disclosure Statement.  As set forth below, the Committee requests that the Court direct the Debtors to include in the Solicitation Package a letter from the Committee, substantially in the form annexed hereto as **Exhibit A**, to convey the Committee's recommendation that creditors vote to reject the Combined Plan and Disclosure Statement and opt out of the Third-Party Release.

---

[2] Capitalized terms used in this Preliminary Statement and not previously defined have the meanings ascribed to them below or in the Combined Plan and Disclosure Statement.

4.      Three primary, unresolved issues remain between the Debtors and the Committee. These three issues form the basis of this Objection:

(i)      the Debtors' proposed "opt out" provision – in the Solicitation Package's form Ballots – related to the Third-Party Release, are completely inappropriate, as made clear by this Court's jurisprudence;

(ii)      the scope of the Debtors' non-consensual Third-Party Release and Exculpation is unwarranted as related to Debtors' officers and directors, whom have provided no contribution to the Plan and are, essentially, being given an impermissible gift without any justifiable explanation; and

(iii)      the Debtors' Plan Injunction, if approved, would provide the Debtors with a discharge on their obligations, which is contrary to the letter and intent of Bankruptcy Code § 1141(d)(3), and renders the Combined Plan and Disclosure Statement unconfirmable.

While the latter two issues could be considered confirmation issues, the Committee raises them now because of their impact on conditional approval of the Debtors' Combined Plan and Disclosure Statement, and on the Debtors' proposed Solicitation Package including the proposed form of Ballots.

5.      Furthermore, the Committee joins in the SEC Objection [Docket No. 546] and UST Objection [Docket No. 547].

## **BACKGROUND AND JURISDICTION**

6.      On April 1, 2019 (the "Petition Date"), Orchids Paper Products Company and certain of its debtor-affiliates each filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (these "Chapter 11 Cases"). Additional

information about the Debtors' background is set forth in detail in the *Declaration of Richard S. Infantino, Interim Chief Strategy Officer of Orchids Paper Products Company, in Support of Chapter 11 Petitions and First Day Pleading* (the "Infantino Declaration") [Docket No. 19].

7.      The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.  No trustee or examiner has been requested in these Chapter 11 Cases.

8.      The Debtors have sold substantially all of their assets. They no longer have any business operations and are in liquidation.

9.      On April 15, 2019, the Office of the United States Trustee appointed the Committee pursuant to § 1102(a) of the Bankruptcy Code [Docket No. 65].

10.     The Court has jurisdiction over the Plan Procedures Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## RELEVANT FACTUAL BACKGROUND

11.     On September 27, 2019, the Debtors filed the *Combined Chapter 11 Plan of Liquidation* (the "Plan") *and Disclosure Statement* (the "Disclosure Statement") *of Orchids Paper Products Company, et al.* (collectively, the "Combined Plan and Disclosure Statement") [Docket No. 538].

12.     Article XI(D) of the Combined Plan and Disclosure Statement contains a deemed release (the "Third-Party Release") of numerous non-Debtors' claims against the Debtors and myriad other non-Debtors, which include, among others, the Debtors' current and former officers and directors who are serving in such capacity on or after the Petition Date, except with respect

to D&O Claims[3] (the "<u>Released Parties</u>"), which is a limited exception.  *See* Combined Plan and

Disclosure Statement, Art. III(A). Specifically, the Third-Party Release states:

> **EFFECTIVE AS OF THE EFFECTIVE DATE, EACH OF THE RELEASING PARTIES CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASES (AND EACH ENTITY SO RELEASED SHALL BE DEEMED RELEASED BY THE RELEASING PARTIES) EACH AND ALL OF THE RELEASED PARTIES, AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (OTHER THAN FOR ILLEGAL CONDUCT, GROSS NEGLIGENCE, BAD FAITH, OR FRAUD), INCLUDING WITH RESPECT TO ANY RIGHTS OR CLAIMS THAT COULD HAVE BEEN ASSERTED AGAINST ANY OR ALL OF THE RELEASED PARTIES WITH RESPECT TO ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, OR THE ESTATES, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE PURCHASE, SALE, TRANSFER, OR RESCISSION OF THE PURCHASE, SALE, OR TRANSFER OF ANY DEBT, SECURITY, ASSET, RIGHT, OR INTEREST OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OR ANY ALLEGED RESTRUCTURING OR REORGANIZATION OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ANY OTHER AGREEMENTS OR DOCUMENTS EFFECTUATING THE COMBINED PLAN AND DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS (INCLUDING, FOR THE AVOIDANCE OF DOUBT, PROVIDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE COMBINED PLAN AND DISCLOSURE STATEMENT OR THE RELIANCE BY ANY**

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Combined Plan and Disclosure Statement.

**RELEASED PARTY ON THE COMBINED PLAN AND DISCLOSURE STATEMENT OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION), AND ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATING TO THE DEBTORS OR THE ESTATES.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASES ARE: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (B) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE RELEASING PARTIES; (C) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS; (D) FAIR, EQUITABLE AND REASONABLE; (E) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (F) CONSENSUAL; AND (G) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD PARTY RELEASE.**

*See* Combined Plan and Disclosure Statement, Art. XI(D).

13.    The Releasing Parties granting the Third-Party Release include:

individually and collectively, (a) each **Holder of a Claim** or Equity Interest that (i) votes to accept the Combined Plan and Disclosure Statement, (ii) is conclusively deemed to have accepted the Combined Plan and Disclosure Statement, (iii) **abstains from voting on the Combined Plan and Disclosure Statement**, (iv) **votes to reject the Combined Plan and Disclosure Statement and does not opt out of the releases contained in the Combined Plan and Disclosure Statement**, or (v) **is conclusively deemed to have rejected the Combined Plan and Disclosure Statement and does not opt out of the releases contained in the Combined Plan and Disclosure Statement**; and (b) as to each of the foregoing Entities in the foregoing clause (a), each such Entities' and their affiliates' current and former officers, directors, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and all other professionals and retained Professionals (in each case as to the foregoing Entities and their Affiliates in clause (a), solely in their capacity as such).

*See* Combined Plan and Disclosure Statement, Art. III(A) ("<u>Releasing Parties</u>") (emphasis added).

14.     As a result of the Third-Party Release, such officers and directors of the Debtors, and their respective property, are deemed to be forever released from any and all Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, or the purchase, sale, transfer, or rescission of the purchase or sale of any debt, security, asset, right, or interest of the Debtors.   *See* Combined Plan and Disclosure Statement, Art. XI(D).   While the D&O Claims against the Debtors' officers and directors are carved out of the Third-Party Release, such claims are limited to only those covered by the Debtors' D&O Policies. It is the Committee's position that ***all claims*** against the Debtors' officers and directors must be carved out of the Third-Party Release. This is crucial because the Debtors' proposed limitation may impair the Estates' ability to bring D&O Claims based on the language of the D&O Policies.

15.     Additionally, the Combined Plan and Disclosure Statement includes an exculpation provision (the "<u>Exculpation</u>") which states:

> Except as otherwise specifically provided in the Combined Plan and Disclosure Statement, none of the Exculpated Parties shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of the Chapter 11 Cases, the Combined Plan and Disclosure Statement, the pursuit of Confirmation, the consummation of the Combined Plan and Disclosure Statement, the administration of the Combined Plan and Disclosure Statement, the property to be liquidated and/or distributed under the Combined Plan and Disclosure Statement or any prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the liquidation of the Debtors, except for their willful or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Combined Plan and Disclosure Statement.

*See* Combined Plan and Disclosure Statement, Art. XI(B).

16.     The "Exculpated Parties" referenced in the Exculpation include the Debtor's Board and officers who are serving in such capacity on or after the Petition Date. *See* Combined Plan and Disclosure Statement, Art. III(A) ("Exculpated Parties").

17.     The Combined Plan and Disclosure Statement also proposes a plan injunction (the "Plan Injunction") which broadly enjoins Holders of Claims from pursuing the Released Parties.[4]

18.     Additionally, on September 27, 2019, the Debtors filed the Plan Procedures Motion. The Plan Procedures Motion's Solicitation Package includes the form Ballots. The Ballot, attached as Exhibit 2 to Plan Procedures Motion's proposed order, will presumably be served on Holders of General Unsecured Claims and other Classes of Claims. While the Ballots provide Holders of Claims the ability to "opt-out" of the Third-Party Release, the following Holders of Claims are deemed to grant a release without their consent:

> (i)     creditors that abstain from voting on the Combined Plan and Disclosure Statement;
>
> (ii)    Claim Holders that vote to reject the Combined Plan and Disclosure Statement and do not opt out of the Third-Party Releases; and

---

[4] The Combined Plan and Disclosure Statement's Art. XI(A) includes the Plan Injunction, which provides that:

> all entities who have held, hold, or may hold Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against any property that is to be distributed under the terms of the Combined Plan and Disclosure Statement on account of any such Claims or Equity Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any lien or encumbrance; (d) asserting a setoff, right, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Combined Plan and Disclosure Statement; *provided, however*, that such entities shall not be precluded from exercising their rights pursuant to and consistent with the terms of the Combined Plan and Disclosure Statement or the Confirmation Order; *provided, further*, that the foregoing shall not apply to any acts, omissions, claims, causes of action or other obligations expressly set forth in and preserved by the Combined Plan and Disclosure Statement or any defenses thereto. Notwithstanding the foregoing, nothing herein shall be otherwise deemed to modify, limit, amend or supersede any injunctions or stays granted in the Sale Order.

(iii)    creditors or interest Holders that are conclusively deemed to have rejected the Combined Plan and Disclosure Statement, but do not opt out of the Third-Party Releases.

*See* Combined Plan and Disclosure Statement, Art. III(A).

## COMMITTEE SOLICITATION LETTER

19.    In the event the Court approves the adequacy of the Combined Plan and Disclosure Statement, the Committee respectfully requests that the Court (a) approve a letter from the Committee,  substantially in the form annexed hereto as **Exhibit A**, advising Holders of General Unsecured Claims that the Committee opposes confirmation of the Combined Plan and Disclosure Statement and recommend creditors vote to reject the Combined Plan and Disclosure Statement and opt-out of the Third-Party Releases, and (b) direct the Debtors to include the Committee solicitation letter in their solicitation package.  Consistent with the decision in *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94 (3d Cir. 1988), the Committee submits that it is appropriate to include the letter as part of the solicitation package.

20.    Should the Court be inclined to conditionally approve the Combined Plan and Disclosure Statement, the Committee requests that the Court approve the Committee solicitation letter and direct the Debtors to include it in the solicitation package directly behind the Debtors' solicitation letter and in a different (yet legible) color paper so the Committee's letter is conspicuous and not relegated to the last document in the Debtors' Solicitation Package.

## OBJECTION

I.    **The Court Should Not Approve the Debtors' Proposed Solicitation Procedures and Form of Ballots Because the "Opt Out" Provision Improperly Imposes Deemed Consent to the Third-Party Releases.**

21.    The Debtors' proposed procedures for the solicitation and tabulation of votes to accept or reject the Combined Plan and Disclosure Statement (the "Solicitation Procedures") and

form of Ballots should require that creditors and other parties-in-interest specifically "opt *in*" to the Third-Party Releases set forth in the Combined Plan and Disclosure Statement to ensure that the Third-Party Release is consensual, especially for those creditors and other parties-in-interest that reject the Combined Plan and Disclosure Statement or otherwise abstain from voting on the same, or are deemed to reject the Combined Plan and Disclosure Statement (such as interest Holders).

22.     As a general rule, third party releases of non-debtors may be allowed only if they are consensual. *See In re Washington Mutual, Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011) (Walrath, J.) (citing, *inter alia, In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party)); *In re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan;) *In re Zenith Elecs Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (Walrath, J.) (release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan).

23.     In the *Washington Mut.* chapter 11 proceedings, this Court previously ruled that an "opt out" mechanism, similar to the one presently proposed by the Debtors, was not consensual and was not acceptable:

> However, the Court concludes that the opt out mechanism is not sufficient to support the third party releases anyway, ***particularly with respect to parties who do not return a ballot*** (or are not entitled to vote in the first place). Failing to return a ballot is not a sufficient manifestation of consent to a third party release. *Zenith*, 241 B.R. at 111 (finding that a release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the Plan). Therefore, the Court concludes that any third

party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases.

*Washington Mut.*, 442 B.R. at 335 (emphasis added).

24.    Additionally, this Court has also rejected a third-party release provision that applied to "each entity that held, holds, or may hold a Claim or Interest (as applicable law allows) . . . of any and all claims existing as of the Plan's Effective Date" without regard to how a creditor voted. *See U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) (holding that non-consensual releases did not satisfy the requirements of *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203 (3d Cir. 2000)).

25.    The Solicitation Procedures and proposed form of Ballots envisioned by the Combined Plan and Disclosure Statement conflict with this Court's jurisprudence because they provide that creditors who fail to vote on the Combined Plan and Disclosure Statement, reject the Combined Plan and Disclosure Statement and fail to "opt out" of the Third-Party Releases, or are deemed to reject the Combined Plan and Disclosure Statement, are deemed to accept the Third-Party Releases and are Releasing Parties. *See* Plan Procedures Motion, Exhibit 4 ("If you abstain from timely completing and returning this opt out form indicating that you opt out of being a Releasing Party and object to the Third-Party Release, upon the Bankruptcy Court's approval and confirmation of the Combined Plan and Disclosure Statement, you will be a releasing party and deemed to have consented to the third party release.") (all caps removed); *see also* Combined Plan and Disclosure Statement, Art. III(A).

26.    The Debtors may cite to Judge Shannon's opinion in *In re Indianapolis Downs, LLC* 486 B.R. 286 (Bankr. D. Del. 2013), for the proposition that unsecured creditors can be deemed to consent to the Third-Party Releases. In *Indianapolis Downs,* the United States Trustee asserted, among other objections, that the third-party releases at issue sought to bind creditors

without affirmative consent, which the objector averred is prohibited under applicable precedent. Judge Shannon, however, held that there is no such "hard and fast rule" that requires affirmative consent; instead, only consent is required. *Id.* at 305. The *Indianapolis Downs* court noted that in *Spansion*, the court held that "returning a ballot is not essential to demonstrating consent to a release." *Id.* Thus, the court in *Indianapolis Downs* held that creditors, who abstained from voting on the plan (and did not otherwise opt out of the releases) were apprised of the consequences of that action and, accordingly, consented to the third-party releases.

27.     This Court is not bound by the judicial guidance offered from another Delaware bankruptcy judge on the subject. Second, the Committee believes that the rationale behind this Court's opinion in *Washington Mut.* rests on sounder footing. Again, in *Washington Mut.*, this Court ruled that third-party releases can only be effective with respect to those entities that affirmatively consented to such releases by voting in favor of a plan *and* did not otherwise opt out of the releases. *Washington Mut.*, 442 B.R. at 355. Additionally, it is significant to note that, in *Indianapolis Downs*, no general unsecured creditor with standing objected to the third-party releases; rather it was the U.S. Trustee contesting the third party releases, a crucial fact that distinguishes the instant matter.

28.     This Court has made it abundantly clear that "[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release." *See Washington Mut.*, 442 B.R. at 355. Accordingly, the Debtors' Solicitation Procedures and proposed form of Ballots should be amended to require creditors and parties-in-interest to specifically "opt *in*" to the Third-Party Releases, not "opt *out*."

29.     In the alternative, under the facts and circumstances of these Chapter 11 Cases -- especially due to the potential for unnamed and unidentified parties to grant non-consensual

releases -- creditors who are deemed to reject the Combined Plan and Disclosure Statement, but

are  required to submit a timely opt-out form, and those creditors that vote to reject the Plan, or

abstain from voting on the Plan, and that do not "opt out" of the Third-Party Releases, should not

be deemed to have consented to the Third-Party Releases, and should be removed from the

definition of Releasing Party under the Plan.

**II.      The Combined Plan and Disclosure Statement Should Not be Conditionally Approved Because it is Patently Unconfirmable.**

30.      The proponent of a chapter 11 plan may only solicit votes to accept or reject a

plan once the Court has approved the written disclosure statement for that plan as containing

"adequate information."  11 U.S.C. § 1125(b).  Section 1125(a) of the Bankruptcy Code defines

"adequate information" as follows:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in
> light of the nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material Federal tax
> consequences of the plan to . . . a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a hypothetical investor of
> the relevant class to make an informed judgment about the plan[.]

11 U.S.C. § 1125(a); *see also Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94,

100 (3d Cir. 1988); *Zenith Elecs.*, 241 B.R. at 99-100 (the disclosure statement must contain

information that is "reasonably practicable [to permit an] informed judgment" by holders of

claims or interests to vote on the plan).

31.      Courts also will not approve disclosure statements that describe plans that are "so

fatally flawed that confirmation is impossible."  *In re U.S. Brass Corp.*, 194 B.R. 420, 422

(Bankr. E.D. Tex. 1996).  Because, as discussed more fully below, the Combined Plan and

Disclosure Statement cannot be confirmed in its current form, it would be counterproductive to

-13-

conditionally approve the Combined Plan and Disclosure Statement and authorize the Debtors to expend estate resources soliciting votes on its Combined Plan and Disclosure Statement.

a. **The Combined Plan and Disclosure Statement's Third-Party Release is Inappropriate and Unjustified.**

32.    While the Third Circuit has intimated, in *dicta*, that non-consensual third party releases may be permissible if there are specific factual findings that they are fair and necessary to the debtor's reorganization, *see Continental Airlines*, 203. F.3d at 214, the Third-Party Release proposed by the Debtors fails to meet this standard. Presently, the proposed Third Party-Release is neither fair nor necessary in the context of these Chapter 11 Cases, given that the Debtors have sold substantially all of their assets and the Combined Plan and Disclosure Statement is a liquidating plan for the primary benefit of Holders of Allowed General Unsecured Claims, and the proposed non-Debtor Released Parties, such as officers and directors, have made no contribution, let alone a substantial contribution, to the assets available for distribution under the Combined Plan and Disclosure Statement.

33.    Specifically, the *Continental* court noted that there are three "hallmarks of permissible non-consensual releases - fairness, necessity to the reorganization, and specific factual findings to support these conclusions." *Id.* at 214. As the Third Circuit recognized, provisions which amount "to nothing more than a lockstep discharge of non-debtor liability . . . fall squarely into the section 524(e) prohibition." *Id.* at 217.

34.    This Court has applied a five factor test to determine whether third-party releases should be approved, including:

i.    the identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;

ii.    substantial contribution by the non-debtor of assets to the reorganization;

iii.    the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success;

iv.    an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes "overwhelmingly" votes to accept the plan; and

v.    provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.

*Zenith Elecs.*, 241 B.R. at 110; *Exide Tech.*, 303 B.R. at 72; *see also In re Saxby's Coffee Worldwide LLC*, 436 B.R. 331, 336 (Bankr. E.D. Pa. 2010) (quoting *In re S. Canaan Cellular Invs., Inc.*, 427 B.R. 44, 72 (Bankr. E.D. Pa. 2010).

35.    Here, none of the factors considered by this Court, and other courts in this Circuit, favor the Third-Party Releases proposed by the Debtors:

i.    Presently, there is very close connection between potential claims and the beneficiaries of the Third-Party Releases.[5] With regard to any potential claims against the Debtors' officers and directors, which are of particular interest to the Committee, these claims would arise out of a common set of facts, but are distinct causes of action than those against the Debtors. Additionally, to the extent there is coverage under the Debtors' D&O Policies for such claims against the Debtors' officers and directors, the proposed Third-Party Releases may impair such Claims depleting the Estates' assets. Thus, with respect to the Debtors' officers and directors, the *first* factor not satisfied;

ii.    The Combined Plan and Disclosure Statement is silent as to the Released Parties contribution to the Debtors' reorganization efforts. The Debtors have not satisfied, and cannot satisfy, this criteria, given they are liquidating their remaining assets through the Combined Plan and Disclosure Statement.  Or to put a finer point on it, the Released Parties have not made any contribution to justify releasing non-Debtor claims held by creditors or other parties-in-interest. Specifically, with regard to the Debtors' officers and directors, the Debtors have failed to demonstrate what, if any, contribution they have provided throughout these Chapter 11 Cases. It is readily apparent that Debtors want to give their officers and directors the gift of a complete release after these individuals failed to contribute any cash or other value towards the Combined Plan and Disclosure Statement, which provides General Unsecured

---

[5] The Debtors have attempted to carve out any claims against the Debtors' officers and directors to the extent of coverage under the Debtors' D&O Policies from the Third-Party Release.  However, the way this carve out is worded could trigger an exclusion under the D&O Policies and, thus, essentially gut any claims against the Debtors' officers and directors. Essentially, as worded, the Third-Party Release includes any claims against the Debtors' officers and directors.

Creditors with a *de minimis* distribution by way of the Orchids Investment Settlement Agreement. Thus, the *second* factor cannot be satisfied;

iii.    The Debtors have not made a showing that the Third-Party Releases are essential to their reorganization. In fact, the Debtors are not reorganizing, having previously sold substantially of their assets pursuant to section 363 of the Bankruptcy Code. Given the fact that the Debtors are liquidating their remaining limited assets for the benefit of General Unsecured Creditors through the Combined Plan and Disclosure Statement, it is difficult to see how the Third-Party Release is necessary or essential to the Debtors' non-existent reorganization efforts. Therefore the *third* factor is not satisfied;

iv.    Given that Debtors have not yet solicited the Combined Plan and Disclosure Statement, the *fourth* factor is not relevant for this discussion at this time; and

v.    Given the Plan clearly does not provide for payment of substantially all of the claims affected by the Third-Party Release (specifically those of the General Unsecured Creditors), the *fifth* factor is not satisfied.

36.    In short, the Third-Party Releases provided under the Plan are impermissible and, as a result, this Court should not conditionally approve the Combined Plan and Disclosure Statement.

37.    Additionally, this Court has previously – and more specifically – held that it does not have the power to grant a third party release of a non-debtor if it is not a consensual release. *Washington Mut.*, 442 B.R. at 352 (citing *Coram,* 315 B.R. at 335) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties.")). Rather, this Court holds that third party releases must be based on consent of the releasing party, be it by contract or voting in favor of the plan. *Washington Mut.*, 442 B.R. at 352*; Zenith,* 241 B.R. at 111.

38.    More narrowly, with regard to the Debtors' officers and directors, "there is no basis for granting third party releases of the Debtor's officers and directors, even if it is limited to their post-petition activity" or otherwise not covered by the D&O Policies. *Washington Mut.*, 442 B.R. at 354. For example, this Court refused to grant the *Washington Mut.* officers and directors

a third party release where their only contribution was in the negotiation of a global settlement. *Id.* In the case at bar, the Debtors have not put forward *any* evidence of a contribution, let alone a meaningful one, by the Debtors' current and former officers and directors which would weigh in favor of the Third-Party Release. Moreover, potential claims against the Debtors' officers and directors may be one of the only sources of recovery for General Unsecured Creditors under the Debtors' Combined Plan and Disclosure Statement besides the Orchids Investment Settlement Payment, which will provide a small distribution to General Unsecured Creditors. Thus, at the very least, the Debtors' officers and directors, specifically, do not warrant such a broad Third-Party Release of any claims parties may have against them. *Id.*; *see also Spansion,* 426 B.R. at 145.

39.     Without question, the Debtors have completely ignored this Court's clear mandate. The Debtors' have failed to demonstrate that Holders of Claims that abstain from voting on the Plan, vote to reject the Plan and do not opt out of the Third-Party Releases, or those deemed to have rejected the Plan but do not opt out of the Third-Party Releases, consented to the Third-Party Release. Additionally, the Debtors have failed to demonstrate any reasoning for granting their officers and directors the benefits of the Third-Party Release.  As such, the Debtors cannot extend the Third-Party Release to non-consenting third parties and, even more so, when the Debtors' officers and directors unjustifiably benefit from such release.

b.  **The Plan's Exculpation Cannot Exculpate Non-Estate Fiduciaries.**

40.     As this Court held in *Washington Mut.*, the "fiduciary standard" underlying exculpation clauses "applies only to estate fiduciaries" and, therefore, "must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers." *Washington Mut.*, 442

B.R. at 350-51 (citing *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000)); *see also In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D. Del. 2011) (excluding non-fiduciaries from the exculpation provision of the plan).

41.    Article XI(B) of the Combined Plan and Disclosure Statement provides that the Exculpated Parties will be exculpated from liability for various actions taken in connection with the Chapter 11 Cases.

42.    In contrast to this provision, section 1125(e) of the Bankruptcy Code provides as follows:

> A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

*See* 11 U.S.C. § 1125(e).

43.    As drafted, the Plan's Exculpation provision could exceed the parameters of section 1125(e) of the Bankruptcy Code because it may potentially include parties other than the estate fiduciaries, including the litany of unidentified parties in the second sentence of the definition of Exculpated Parties. Therefore, the Plan is patently unconformable unless the exculpation provision is revised consistent with the parameters of section 1125(e) of the Bankruptcy Code.

**III.    The Combined Plan and Disclosure Statement Violates Bankruptcy Rule 3016(c) by Failing to Conspicuously Disclose the Scope of the Plan Injunction.**

44.    Bankruptcy Rule 3016(c) provides that

> [i]f a plan provides for an injunction against conduct not otherwise enjoined under the [Bankruptcy] Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction.

Fed. R. Bankr. P. 3016(c)

45.     A cursory review of the Plan Injunction (*See* Combined Plan and Disclosure Statement, Art. XI(A)) demonstrates that the Disclosure Statement does not comply with Bankruptcy Rule 3016(c), as the relevant language is neither bolded, italicized, or underlined.

46.     Moreover, it is apparent that the Plan Injunction is not permissible because the Debtors are liquidating.  Section 1141(d)(3) of the Bankruptcy Code provides that:

> The confirmation of a plan does not discharge a debtor if--
>
> > (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
> >
> > (B) the debtor does not engage in business after consummation of the plan; and
> >
> > (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3); *see also Teamsters Pension Tr. Fund of Philadelphia & Vicinity v. Malone Realty Co.*, 82 B.R. 346, 349 (E.D. Pa. 1988) ("Under § 1141(d)(3), a corporate or partnership debtor that is both liquidating and discontinuing its business does not receive a discharge when its plan is confirmed."). Here, the Debtors' Plan Injunction it is being used as an end-run around the Bankruptcy Code's prohibition of granting liquidating debtors a discharge.

47.     This is a liquidating case. The Combined Plan and Disclosure Statement does not contemplate the Debtors' engaging in business after Combined Plan and Disclosure Statement's Effective Date. The record unquestionably demonstrates that the sale for substantially all of the Debtors' assets has been consummated and the Debtors no longer operate any business. Finally, § 727(a)(1) of the Bankruptcy Code provides that the court shall not grant a debtor a discharge

where such debtor is not an individual. *See* 11 U.S.C. § 727(a)(1). Under section 727(a)(1), only

an individual, not a corporate entity, can receive a discharge. *In re Sarfani, Inc.*, 527 B.R. 241,

245 (Bankr. N.D. Miss. 2015) (The debtor "is not an individual and is therefore not entitled to a

discharge under Chapter 7 of the Bankruptcy Code."); *see also In re Midway Gold US, Inc.*, 575

B.R. 475, 515 (Bankr. D. Colo. 2017) (In denying confirmation of a chapter 11 plan, the court

held "[s]uch releases are impermissible under §1141(c) and (d) because a liquidating Chapter 11

plan may not provide for the discharge of a debtor or enjoin actions against property of the

debtor's estate."). Here, the Debtors are not individuals and, as a result, would not be entitled to a

discharge in a chapter 7 case. Accordingly, the Debtors are not entitled to a discharge because all

three prongs of § 1141(d)(3) of the Bankruptcy Code are satisfied.

48.     Despite the Debtors' ineligibility for a discharge pursuant to Bankruptcy Code §

1141(d)(3), the Combined Plan and Disclosure Statement purports to enjoin claimants from

"commencing or continuing, in any manner . . . any action or other proceeding" on account of

their claims. *See* Combined Plan and Disclosure Statement, Art. XI(A). Thus, given that all three

prongs of § 1141(d)(3) will be satisfied upon confirmation of the Combined Plan and Disclosure

Statement, the Plan Injunction is inappropriate, as it violates § 1141(d)(3).

49.     Even if the Plan Injunction were permissible, which it is not, the Disclosure

Statement does not "describe in specific and conspicuous language . . . all acts to be enjoined" by

the Plan Injunction.  Rather, to ascertain the types of claims that the Plan Injunction would bar

after the effective date of the Combined Plan and Disclosure Statement, a hypothetical party

must first ascertain whether they "held, hold, or *may hold* Claims against or Equity Interests in

the Debtors." *See* Combined Plan and Disclosure Statement, Art. XI(A). If the answer to that

inquiry is "Yes," then the Plan Injunction would enjoin the creditor from asserting a yet-to-be

determined Claim. In practice, the analysis is remarkably convoluted, and the Debtors provide no explanatory disclosure in the Disclosure Statement. It is essentially impossible for a Holder of a Claim to determine what future Claim it may have against the Debtors.

50.     Absent appropriate revisions to the Combined Plan and Disclosure Statement to remedy the defects and issues relating to the propriety of the Plan Injunction, the Combined Plan and Disclosure Statement should not be conditionally approved.

## RESERVATION OF RIGHTS

51.     The Committee reserves the right to supplement or amend this Objection at or prior to the hearing on the Plan Procedures Motion.  The Committee reserves all rights with respect to confirmation of the Combined Plan and Disclosure Statement (as may be amended from time to time), or any other chapter 11 plan proposed in the Debtors' Chapter 11 Cases, including but not limited to objecting to confirmation of any plan on any and all grounds, regardless of whether such grounds are raised in this Objection.  Nothing in this Objection constitutes an admission by the Committee with respect to any Claims or Estate Causes of Action.

## CONCLUSION

52.     In sum, the Third-Party Releases must be rejected by the Court because the Debtors' current and former directors and officers are providing no value to the Combined Plan and Disclosure Statement and the way the Third-Party Releases and D&O Claims exclusion operate will, in all likelihood, impair the Liquidating Trustee's ability to bring an action under the D&O Policies.  Approval of the requested Third-Party Releases are wrong under existing law as set forth above and harm the economic interests of unsecured creditors.  Thus, the Court should deny the Third-Party Releases.

53.     For all of the foregoing reasons, the Debtors' Combined Plan and Disclosure Statement should not be conditionally approved and the Plan Procedures Motion should be denied unless the issues raised in this Objection are addressed through appropriate modifications of the Combined Disclosure Statement and Plan, the Solicitation Procedures, and the proposed form of Ballots.

*[Remainder of this page intentionally left blank]*

Dated:  October 11, 2019

**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**

*/s/ Marc J. Phillips*

Marc J. Phillips (No. 4445)
1105 North Market Street
Suite 1500
Wilmington, DE 19801
Telephone: (302) 504-7823
E-mail: mphillips@mmwr.com

-and-

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq. (*admitted Pro Hac Vice*)
Mary E. Seymour, Esq. (*admitted Pro Hac Vice*)
Bruce Buechler, Esq.  (*admitted Pro Hac Vice*)
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
E-mail: krosen@lowenstein.com
          mseymour@lowenstein.com
          bbuechler@lowenstien.com
          jdipasquale@lowenstein.com

Jennifer Kimble, Esq. (*admitted Pro Hac Vice*)
Gabriel L. Olivera, Esq. (*admitted Pro Hac Vice*)
1251 Avenue of the Americas
New York, New York
Telephone:  (212) 262-6700
Facsimile:  (212) 262-7402
E-mail: jkimble@lowenstein.com
          golivera@lowenestein.com

*Counsel for the Official Committee of Unsecured Creditors*